**UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, Appellant,**

v.

**Roscoe B. SMITH and Ida Smith, Ronald G. Callahan, Harold L. Smith and Ruth Smith, Appellees.**

**No. 16536.**

United States Court of Appeals Ninth Circuit.

May 31, 1960.

Moore & Romley, Jarril F. Kaplan, Phoenix, Ariz., for appellant.

Scott, Cavness & Yankee, Thomas J. Croaff, Gorodezky, Mitchell & Stuart, Dan Cracchiolo, Jack C. Cavness, Phoenix, Ariz., for appellees.

Before STEPHENS, HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Appellant commenced this action to obtain a judgment declaring that appellee Callahan was not insured by appellant at the time and place of an accident which occurred on March 28, 1957. Jurisdiction is based upon diversity of citizenship. The District Court, sitting without a jury, concluded that Callahan was insured and entered judgment in favor of appellees. This appeal is taken from that judgment.

If Callahan was insured, it was under the terms of a policy issued by appellant to appellee Roscoe B. Smith. The omnibus clause of that policy extended coverage to "any person while using an owned automobile * * * provided the actual use of the automobile is by the Named Insured or with his permission." Appellant contends that there is no evidence from which the District Court might have found that, at the time and place of the accident, the "actual use of the automobile" by Callahan was with Smith's permission.

Roscoe B. Smith and Ida Smith, his wife, own and operate a laundry and dry cleaning business in Phoenix, Arizona. On March 8, 1957, appellant issued an insurance policy to R. B. Smith covering a Willys station wagon owned by him. The policy contained the omnibus clause hereinbefore quoted.

In January, 1957, appellee Callahan, seventeen years of age, came to Phoenix from his home in California to work for R. B. Smith, his grandfather. He was employed as a pickup and delivery boy. In the course of his duties, he was permitted to and did use the insured station wagon.

For the first two or three weeks, Callahan lived with his grandfather. He then went to live with Harold L. Smith and Ruth Smith, his uncle and aunt, and Ronald M. Smith, known as "Michael," his cousin. Harold L. Smith was the son of R. B. Smith and was at first employed in his father's plant. During this period, Callahan rode to and from work with him. Later Harold Smith took over one of his father's agencies located away from the plant. At that time, R. B. Smith told Callahan to take the station wagon at night for the purpose of having transportation to and from work. They had no other conversation regarding the use of the station wagon. It was understood by both parties, however, that Callahan could use the car for such purposes as running errands to the grocery store and drug store.

At about two o'clock on the morning of March 28, 1957, while Harold and Ruth Smith were sleeping, Callahan and his cousin, Michael, took the car, left Phoenix and proceeded toward Superior, Arizona. Some four and one-half hours later, at approximately 6:30 that morning, about eighteen miles from Phoenix, near Mesa, Arizona, Callahan fell asleep at the wheel. The car left the highway and overturned and both boys were injured. Callahan testified that Michael was planning to run away from home; that Callahan had decided to drive Michael around until morning, when Michael's father, Harold Smith, could be consulted.

The District Court found as fact that Callahan "was driving the insured automobile with the permission of the insureds." R. B. Smith and Callahan both testified that Callahan had no express permission to use the car at the time and place of the accident. The question then is whether the record provides support for a determination that permission to use the car on the particular occasion was impliedly granted.

Appellant asserts that if implied permission is to be found it must come through construction of the grant of permission which was expressly made. Appellant thus frames the issue of this appeal as involving a choice between two lines of authority dealing with the question of the extent of permission to be implied under such an omnibus clause where the express grant is a limited one: (1) the so-called liberal or "Hell and high water" rule to the effect that permission for any purpose implies permission for all purposes, Annotation 5 A.L.R.2d 600, 622, 629 (1949); (2) the so-called "minor deviation" rule to the effect that the use must be that actually contemplated by the parties or such a minor deviation therefrom as to be immaterial. Anno., supra, 636. There are no Arizona decisions involving this problem.

We do not so view the issue upon this appeal. To our minds, the question is whether the record supports the proposition advanced by appellees to the effect that, notwithstanding the limitations of the express grant of permission, the owner had acquiesced in a general use of the car by Callahan and that implied permission for general use is to be found through conduct of the owner and of the user.

The testimony of R. B. Smith was as follows: He had told Callahan that Callahan could use the car for the purpose of having transportation to and from work. He had never discussed the matter further with Callahan and had never told him that he could use it for other purposes or that he could not. R. B. Smith had told his son, Harold, to see to it that if Callahan took the car out evenings he was to get Harold's permission and that

whatever Harold said in this respect was all right with R. B. R. B. knew that Callahan was putting the car to his own use in town. He knew of one occasion when Callahan had, without permission, taken the car to California. Callahan had authority to charge gasoline to R. B., and it may be inferred that R. B. had realized from the gasoline bill that Callahan was making personal use of the car. R. B. had never said anything to Callahan about this.

Harold Smith testified to the following effect: Callahan used the car "just like it was his own." He drove it out evenings for purposes other than his work. Harold had not told him not to do so. Harold had reported this to R. B., who seemed worried abut the gasoline Callahan might be using but did not instruct Harold that he was not to let Callahan continue to use the car. Harold testified:

"Q. Did you ever have any discussion with Ronald Callahan about what he was or was not to use that jeep truck for? A. Yes sir, I gave him my opinion. * * * I told him that he should have good sense in using it if his grandfather let him. * * * Q. Did he use the truck in the evenings as he saw fit? A. Yes sir. Q. Were you ever told beyond the fact of, 'Don't let a bunch of boys run around in that truck?' Were you ever told anything beyond that by your father as to the use of that truck? A. No sir."

We find then testimony to the effect that the boy was making general use of the car as he saw fit, as though it were his own, without bothering to get permission; that both Harold and R. B. knew this, and neither had instructed the boy to limit his use; that Harold had expressed an opinion to the boy to the effect that he should use good sense as to the manner in which he used the car.

This testimony supports a determination of implied permission for general use with the owner deferring to the judgment of the user as to the nature of the use.

Traders & General Ins. Co. v. Powell, 8 Cir., 1949, 177 F.2d 660, was a case in which the employee was permitted to take his employer's logging truck home in the evening as transportation to and from his work. The owner testified that no personal use was to be made of the truck aside from the transportation to and from work. Testimony was presented that the employee, in violation of this instruction, had used the truck for personal reasons under such circumstances that the employer could have known of such personal use. The court stated, at page 665:

"The evidence warrants the inference that Sturgis [the owner] knew that Hardy [the employee] was using the truck as his own; that he was disobeying the instruction not so to use it; and that Sturgis acquiesced in such use. That Sturgis impliedly consented to the use of the truck on the occasion in question is, therefore, a reasonable inference. This conclusion is strengthened by the fact that Sturgis permitted Hardy to keep the keys to the truck at all times."

To the same effect is State Farm Mutual Automobile Insurance Company v. Cook, 1947, 186 Va. 658, 43 S.E.2d 863, 5 A.L.R.2d 594.

Ronald Callahan, on the other hand, testified that usually, when he went out evenings, he asked his grandfather or his uncle for permission to use the car. On the evening in question, he testified, he knew that he was not supposed to use the car for that purpose and that he should not have taken it without permission.

The police officer who had investigated the wreck testified that, in a conversation immediately following the accident, Callahan "was very much scared because he had taken the car without permission of his grandfather."

This testimony does not necessarily destroy the implication of general permission. One having permission to use the property of another may well feel concern over the fact that the use has been obviously ill-advised and subject to criti-

cism by the owner. Such concern then is not necessarily inconsistent with permission for general use. Further, Ronald's testimony (as an adverse witness on deposition) had been given after he had heard the taking of his grandfather's deposition and that deposition had been called to his attention in the course of his own examination. That Callahan felt himself to be under an obligation to secure express permission for personal use is squarely contradicted by the testimony of his uncle as to his actual conduct.

We conclude that the record provides support for a determination that the permission of the owner was for general use of the Willys station wagon and covered the use of the car by Callahan on the occasion in question. The District Court's finding of permission was not, then, clearly erroneous. Under such finding the omnibus clause provided coverage at the time of the accident.

Affirmed.