AMERICAN UNIVERSAL INSURANCE COMPANY, a corporation, Plaintiff,

v.

Emerson J. DYKHOUSE, Administrator of the Estate of Donald B. Sharp, deceased, et al., Defendants.

Civ. No. 1268.

United States District Court
N. D. Iowa, W. D.
June 11, 1963.

John J. Vizintos, Sioux City, Iowa, for plaintiff.

Louis L. Corcoran, Sibley, Iowa, for individual defendants.

Clyde Putnam, Jr., Des Moines, Iowa, for defendant Motor Vehicle Cas. Co.

HANSON, District Judge.

This case was tried partly pursuant to a stipulation of facts set out as follows:

"1. That the decedent, Donald B. Sharp, had the permission of his superiors in the South Dakota State Department of Agriculture, where he was then employed, to attend the annual meeting or convention of the North Central States Association of Food, Drug, Feed and Fertilizer Control Officials, to be held at the Sheraton-Cataract Hotel in Sioux Falls, South Dakota, on July 26 and 27, 1960; that the said Donald B. Sharp also had the permission of his said superiors in said Department of Agriculture to drive the 1956 Ford Mainline automobile, state license number 39, owned by the State of South Dakota, Department of Agriculture, and furnished him by said State of South Dakota, Department of Agriculture, for his use in connection with his duties, which said automobile was then insured by the plaintiff company, to Sioux Falls, South Dakota, from his home at Highmore, South Dakota, on July 25, 1960, for the purpose of attending such meeting.

"2. That if Neal Kroon, the Sheriff of Lyon County, Iowa, were called as a witness by any of the parties in said cause, he would testify as follows: that he was called to the scene of a collision west of Larchwood, Lyon County, Iowa, on the evening of July 25, 1960; that a 1956 Ford automobile owned by the State of South Dakota, Department of Agriculture, state license 39, driven by Donald B. Sharp, and a car owned by Frank Dieren and driven by Gary Dieren were involved in said collision; that said collision occurred about two and one-half miles southeast of the Iowa-South Dakota state line in Lyon County, Iowa, which point of collision was approximately sixteen or seventeen miles southeast of Sioux Falls, South Dakota, on Iowa highway No. 9; that at the time of the collision the Dieren car was headed west on said highway, and the South Dakota State car driven by Sharp was headed east on said highway; that Gary Dieren was accompanied by Marilyn Vogel in the car driven by him, and that Donald B. Sharp was alone in the State vehicle; that Sharp was killed instantly in said collision; that in the State car driven by Sharp, he (the Sheriff) found a half-pint bottle of whiskey, two-thirds to three-fourths consumed."

There was a considerable amount of other evidence introduced at the trial. There were two insurance policies in question. The policy issued by American Universal Insurance Co. listed the named insured as the State of South Dakota, Department of Agriculture. Where bodily injury liability and property damage liability were concerned, the policy was to cover both pleasure and business purposes. The automobile involved in the accident was one listed in the policy as being covered, and at the time of the accident, was being driven by the decedent, Donald B. Sharp. The other policy was issued by Motor Vehicle Casualty Company to Donald B. Sharp. This policy injects an issue of excess coverage.

Whether Donald B. Sharp was covered by the American Universal policy depends upon whether he was driving the automo-

bile in question at the time of the accident with permission of the named insured, State of South Dakota Department of Agriculture. The word "permission" must be construed according to the meaning it has been given in other insurance policies. This case was tried without a jury. Therefore, the fact questions as to whether there was implied authority, actual authority, or more than a slight deviation from this permission are to be decided by the judge sitting as the trier of fact.

### EXPRESS PERMISSION

As to the express authority or permission for the use of the automobile in question at the time of the accident, the State of South Dakota Travel Regulations are most in point. These regulations in Exhibit A say that the direct route will usually be taken. The regulations in Exhibit A became effective on August 1, 1959. However, the regulations allow an indirect route to be taken or for the travel to be interrupted. According to the regulations, this is allowed whenever it is for the convenience of the officer or employee in question. Donald B. Sharp was killed in the accident and, therefore, his purposes cannot be known. The travel regulations prescribe only that the extra expense of the indirect route is to be borne by the employee or officer taking such indirect route. In Section XV of the travel regulations, it is stated that travel not exceeding twenty-five miles from the South Dakota boundary line shall be considered as in-state travel. There was evidence that Donald B. Sharp never reached Sioux Falls, South Dakota, which tends to show that an indirect route was taken. There was evidence that Donald B. Sharp had not registered at any hotel or motel in Sioux Falls. The evidence that he might have been driving around the countryside close to Sioux Falls to cool off on this warm summer night is not inconsistent with this. Neither is the evidence that the Sharp car may have been pointed east at the time of the accident inconsistent with the taking of an indirect route or of an interruption of travel for

the convenience of Sharp. There is no evidence that Sharp did not bear any extra expense, or that he had not done this in the past.

Donald B. Sharp in no way violated any express travel instructions. There were no allegations made or evidence of any violation of any express instructions.

Exhibits B and C also deal with certain travel restrictions. These restrictions in exhibits B and C, as shown by the evidence, were not intended to apply to employees in the status of Donald B. Sharp. Exhibit C states that no State owned vehicle shall be used for personal convenience of the traveler including driving the vehicle to and from work, and all vehicles must be parked at night and on non-work days in designated parking lots. The testimony was uncontested that Donald B. Sharp had permission to take the automobile home in the evening with him. There is evidence from his wife that Donald B. Sharp used the automobile sometimes in the evenings and on the weekends around his home. It was not admitted on direct examination but was admitted reluctantly on cross-examination of the wife of Donald B. Sharp. Plus, at least on one occasion, he detoured to Highmore, South Dakota, to see his son and sometimes his wife rode in the state car with him.

In depositions of Mr. Ernest L. Johnson, Secretary of Agriculture for the State of South Dakota, and Mr. Stanley Fosnes, the Assistant Director of the Division of Purchasing and Printing, the issue of the affect of the regulations was gone into. The evidence was that the clause in Exhibit C stating that the Department, institution and agency heads shall be responsible for the limitation in use of any passenger vehicles in the custody of their respective department, institution or agency, left discretion in the head of the particular agency as to the use to be made of the automobiles in their agency.

Travel directives are sent to the heads of the agencies, and the head of a particular agency then distributes whatever he desires to the particular employee.

This is the procedure according to the knowledge of Mr. Fosnes. Mr. Johnson stated that he did not know what instructions had been given to Donald B. Sharp with respect to the use of the state-owned car. The records, according to Mr. Johnson, showed that a state-owned car had been assigned to Donald B. Sharp.

It is admitted by stipulation that Donald B. Sharp was driving the 1956 Ford Mainline automobile with license number 39 owned by the State of South Dakota, Department of Agriculture, and that it was furnished him for the purpose of use in connection with his duties at the time of the collision. This automobile is listed as the 13th car in the policy of insurance issued by the American Universal Insurance Co. to the State of South Dakota, Department of Agriculture. This automobile was covered by this policy when an employee of this Department was operating the automobile with permission.

## IMPLIED AUTHORITY OR SLIGHT DEVIATION

It is not necessary for the Court to make a finding as to implied authority or as to deviation because there was express authority for the use in this case. However, even if there was not express authority, the deviation would be incident to the purposes of his employer, that is, travel to Sioux Falls for the convention. Also, there was evidence of such prior personal use of the automobile whereby it might be inferred that it was being acquiesced in. However, the reason for this acquiescence was that it was expressly allowed by the travel regulations.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court makes the following findings and conclusions:

1. That the authority given in the travel regulations marked Exhibit A were in effect at the time of the collision.

2. That the limitations existing in the directives shown as Exhibits B and C were not carried into effect as to this particular employee, Donald B. Sharp; and that the department for which Donald B. Sharp was working did not follow the directives given in Exhibits B and C and the department had the above mentioned discretion to govern the use of the automobiles under its custody.

3. There was permission to use the automobile in question for the trip to Sioux Falls to attend said meeting or convention and this is undisputed. The exact purpose for which the car was being used at the time of the collision cannot be determined because Donald B. Sharp is deceased. However, there was some evidence that he may have been taking an indirect route to Sioux Falls. This is the most logical conclusion and the Court finds it to be the fact.

4. That the evidence shows that there was permission to use the state-owned car generally and permission to use it at least for some personal purposes.

5. That Donald B. Sharp made some use of the automobile in question for personal purposes in and around his home on weekends and in the evenings, and that he had permission to have the automobile with him day and night.

6. That the use of the state-owned car by Donald B. Sharp at Sioux Falls was completely consistent with the permission as shown in the travel regulations and consistent with the general permission Donald B. Sharp had to use the car and consistent with the permission he had to use the car for personal purposes.

7. That the named insured in the American Universal policy was the Department of Agriculture of the State of South Dakota, and listed as such in this policy.

8. That the actual permission given to Donald B. Sharp to use the automobile was given to him by the Department of Agriculture of the State of South Dakota pursuant to the Department's authority over the automobiles used by that Department.

9. That at the time of the collision with the Dieren automobile, Donald

Sharp was enroute to his place of lodging in Sioux Falls, South Dakota, pursuant to his orders to attend a convention there. For this reason, he was using the vehicle for his employer's purposes. His use of the vehicle for a personal purpose, if any, would be only incidental to this purpose of his employer.

The cases dealing with the definition of permission in automobile liability insurance policies are annotated in 5 A.L.R.2d. Authorities have generally classified the cases into three groups, the strict rule, the slight deviation rule, and the initial permission rule. The slight deviation rule appears to be the majority rule with the initial permission rule the second most popular. It is, however, really impossible to categorize the cases on this basis because the facts in the cases may be the reason for the differences in results and not so much the rule that the court is using.

At any rate, there are no South Dakota cases on this problem except Stoll v. Hawkeye Casualty Co., 8 Cir., 193 F.2d 255, which arose in the Federal Court but was required to use South Dakota law. The Court recognized that there was no South Dakota case on the problem, and without saying exactly which of the rules it would use, the Court attributed a liberal rule to the South Dakota law.

The word "permission" as used in the American Universal insurance policy, marked as Plaintiff's Exhibit 1 in this case, means actual permission express or implied.

■ Implied permission is actual permission circumstantially proven. Traders & General Insurance Co. v. Powell, 177 F.2d 660, 666–667 (8th Cir.); Stoll v. Hawkeye Casualty Co., supra. In the case at bar, there was express permission given in the travel regulations found in Exhibit A. The travel regulations say that an indirect route can be taken by the employee. The State owned car can be used for taking the indirect route and the travel can be interrupted by the employee. The employee could do this whenever it was for his convenience.

There was evidence that he was for some reason taking an indirect route into Sioux Falls. It may have been because of the weather.

■ To show implied permission, it is necessary to show that there were prior times in which the automobile was used in ways and for purposes similar to the use in question and that the prior use of the automobile was known by the named insured, in this case the Department of Agriculture of the State of South Dakota, or that the prior use was under such conditions that the named insured must have known. This inference that the named insured knew of the prior use of the automobile, which inference arises when the facts are such that the named insured must have known of the prior use, is sufficient to allow the trier of fact to find that the named insured did know. Traders & General Insurance Co. v. Powell, supra; United States Fidelity & Guaranty Co. v. Smith, 279 F.2d 678 (9th Cir.); State Farm Mutual Automobile Insurance Co. v. Cook, 186 Va. 658, 43 S.E.2d 863, 5 A.L.R.2d 594; Stoll v. Hawkeye Casualty Co., supra.

In the Stoll case, the Court did not go so far as to say that it had to be proven that the named insured knew of prior similar use, but rather said that facts and circumstances such as the relationship of the parties and the nature of the express permission may justify an inference that there was actual permission broader than the express permission. In this case, there was express permission allowing Sharp to use the automobile in question for non-business purposes. There was permission to use the automobile for personal missions. There was permission to keep possession of the automobile both day and night. These are factors which courts have said tend to create an inference of implied authority, that is, that the actual authority was broader than the express authority. Stoll v. Hawkeye Casualty Co., supra; Traders & General Insurance Co. v. Powell, supra.

Donald Sharp was not on a deviation from his actual permission at the time

of the collision with the Dieren automobile. But even if the actual permission did not exist, the deviation would only be a slight one. He may have been using the automobile for some purpose of his own, but his employer's purpose was the dominate one. His personal purpose was only an incident to his employer's purpose of having him in Sioux Falls. When this is true, there is only a slight deviation. Rainwater v. Wallace, 169 S.W.2d 450 (Mo.App.)

■ The Court hereby adjudicates and declares that Donald B. Sharp, Deceased, was operating an automobile listed in Policy No. AC126531, Exhibit A, which was issued by the American Universal Insurance Company to the Department of Agriculture, State of South Dakota, and that the operation by Donald B. Sharp of the automobile was with the permission, as that word is used in this policy, of the named insured, Department of Agriculture, State of South Dakota. The Court, therefore, further declares that the plaintiff, American Universal Insurance Company is to that extent obligated to the Estate of Donald B. Sharp.

COUNTERCLAIM BY MOTOR VEHICLE CASUALTY COMPANY against AMERICAN UNIVERSAL INSURANCE COMPANY and CROSSCLAIM by MOTOR VEHICLE CASUALTY COMPANY against EMERSON J. DYKHOUSE, Administrator of the ESTATE OF DONALD B. SHARP, deceased, FRANK DIEREN, GARY DIEREN, ALFRED VOGEL, EVELYN VOGEL, and MARILYN VOGEL.

Besides the policy issued by American Universal Insurance Co. insuring the automobile which Donald B. Sharp was driving at the time of the collision with the automobile driven by Gary Dieren, there is another insurance policy involved. That is a policy issued by Motor Vehicle Casualty Company to Donald B. Sharp insuring Donald B. Sharp's private automobile, a 1957 Ford Custom.

Motor Vehicle Casualty Company's first argument is that if Sharp was not operating the South Dakota owned automobile with permission of the named insured within the meaning of those terms in the American Universal Insurance Company policy covering the State owned automobile, then and in that event, Motor Vehicle Casualty Company is in no way liable as a result of the collision of that car with the Dieren automobile. This argument is based on the fact that the State owned automobile which Donald B. Sharp was driving at the time of the collision was as to Sharp a "non-owned" automobile as that term is used in the Motor Vehicle Casualty Company policy and that this policy only insured the use of a non-owned automobile when such automobile was being used with the permission of the owner or authorized custodian.

This contention can not be sustained as it has been determined that Donald B. Sharp was operating the State owned automobile at the time of the collision with permission of the named insured in the American Universal policy. It is also to be noted that in paragraph 7 of the Counterclaim, Motor Vehicle Casualty Company pleaded that the State owned automobile was being operated with permission of the insured in the American Universal policy, and the contrary is pleaded in paragraph 12.

Paragraph 13 of the Counterclaim alleges that if the State owned automobile which Sharp was driving at the time of the collision was an automobile furnished to Sharp for his "regular use" as the term "regular use" is used in the Motor Vehicle Casualty Company policy, then and in that event, Motor Vehicle Casualty Company would have no liability for the use of that automobile as it would not be a non-owned automobile under the Motor Vehicle Casualty Company policy. That clause of the policy is as follows: "Non-owned automobile means a private passenger * * * automobile * * * not owned or furnished for the regular use of either the named insured or any relative * * *". Motor Vehicle Casualty Company appeared in its brief to abandon this contention. See page 15

of the Motor Vehicle Casualty Company brief and see also part VI of the Motor Vehicle Casualty Company brief at page 4. No case has been cited to the Court which in any way helps in interpreting what the phrase "regular use" means and the Court has not been able to find any case on this point.

■■ The automobile was furnished to Sharp for limited personal use and, therefore, the Court concludes that the automobile was not furnished for regular use as that term is used in the Motor Vehicle Casualty Company policy. An insurance policy is to be construed in favor of the insured when the terms are of doubtful meaning. Rainwater v. Wallace, supra; Bankers Life Co. v. Union Auto Indemnity, 326 Ill.App. 83, 61 N.E. 2d 577. Therefore, it is concluded that Motor Vehicle Casualty Company's contention based on this argument can not be sustained.

Motor Vehicle Casualty Company next argues that its liability, if any, to Dykhouse, the Dierens, and the Vogels is only for that part of their judgment against the Estate of Donald B. Sharp, in the event that such a judgment is recovered, which exceeds the policy limits of the American Universal policy issued to the Department of Agriculture, State of South Dakota, covering the automobile involved in the collision with the Dieren automobile.

All the facts enumerated and findings made in the memorandum concerning the action wherein American Universal is the Plaintiff and Motor Vehicle Casualty Company is a defendant are incorporated into this counterclaim and cross-claim.

In addition, the Court finds: (1) That Donald B. Sharp was not driving the 1957 Ford which was listed in the Motor Vehicle Casualty Company policy issued to Donald B. Sharp at the time of the collision with the Dieren automobile; (2) That both the insurance policy issued by American Universal Insurance Company to the Department of Agriculture, State of South Dakota, covering the car Donald B. Sharp was using and the policy issued by Motor Vehicle Casualty Company to Donald B. Sharp covering the 1957 Ford personally owned by Sharp were in full force and effect on July 25, 1960; and (3) That the 1956 Ford owned by the State of South Dakota which Sharp was driving on July 25, 1960 at the time of the collision is a "non-owned automobile" within the meaning of the Motor Vehicle Casualty Company policy, and that the 1956 Ford was owned by the named insured in the American Universal policy.

The American Universal policy has a clause saying its liability is to be prorated with all other valid and collectible insurance against the loss. The Motor Vehicle Casualty Company policy has a clause saying that its insurance with respect to a non-owned automobile shall be excess insurance over any other valid and collectible insurance.

■ There are no South Dakota cases which have resolved such a situation as this. The majority rule is that the insurer of the named insured who owns the automobile is liable up to the limit of its policy and the insurer of the named insured to whom the automobile was non-owned is liable only as to the excess over the limits of the other policy. In this case, that means that American Universal Insurance Company may be liable up to the limits of its policy and that Motor Vehicle Casualty Company may be liable, if any, only to the amount which the liability may exceed the limits of the American Universal policy. Stated differently, the Motor Vehicle Casualty insurance is not other valid and collectible insurance within the meaning of those terms in the American Universal policy. This is the majority rule which has been adopted in Travelers Indemnity Co. v. National Indemnity Co., 292 F.2d 214 (8th Cir., 1961); Motor Vehicle Casualty Co. v. Le Mars Mutual Insurance Co., 116 N.W.2d 434 (Iowa). The cases are annotated in 76 A.L.R. 502. These cases will be followed in this case. No distinction is made where an employer-employee relationship is involved. Eicher v. Universal Underwriters, 250 Minn. 7,

83 N.W.2d 895; McFarland v. Chicago Express, Inc., 200 F.2d 5 (7th Cir.). These two cases are almost identical in this respect to the facts of the case at bar.

Motor Vehicle Casualty Company in their prayer for relief did not ask to have adjudicated their obligations to defend in the event that Motor Vehicle Casualty Company was adjudicated the excess insurance carrier. Therefore, the Court does not adjudicate their obligations other than to say Motor Vehicle Casualty Company is obligated to Donald Sharp's Estate in the event the judgment against it, if any, exceeds the limits of the American Universal Insurance Company policy.

It is, therefore, declared and adjudicated that Motor Vehicle Casualty Company is an excess insurance carrier as explained in this Memorandum.

It is further ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.