326 F.2d 694
 AMERICAN UNIVERSAL INSURANCE COMPANY, a Corporation, Appellant,
v.
Emerson J. DYKHOUSE, Administrator of the Estate of Donald
B. Sharp, Deceased, Frank Dieren, Gary Dieren, Alfred Vogel,
Evelyn Vogel, Marilyn Vogel, and Motor Vehicle Casualty
Company of Elmhurst, Illinois, Appellees.
 No. 17414.
 United States Court of Appeals Eighth Circuit.
 Jan. 17, 1964.
 
 George F. Madsen, Sioux City, Iowa, made argument for appellant and filed brief with John J. Vizintos, Sioux City, Iowa, of counsel, Shull, Marshall, Mayne, Marks & Vizintos, Sioux City, Iowa.
 Louis L. Corcoran, Sibley, Iowa, made argument for appellees except Motor Vehicle Casualty Company of Elmhurst, Illinois and filed brief with Earl H. Fisher, Rock Rapids, Iowa, of counsel, Fisher & DeWaay, Rock Rapids, Iowa. Clyde Putnam, Jr., Des Moines, Iowa, filed appearance form for Motor Vehicle Casualty Co. of Elmhurst, Illinois but did not file brief, or make argument.
 Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 In this diversity action, American Universal Insurance Company (appellant) sought a declaratory judgment relieving it of any obligation, under an insurance policy issued by it to the State of South Dakota, Department of Agriculture, to defend litigation or respond for damages arising out of an accident involving a state-owned automobile described in the policy. Donald B. Sharp, an employee of the Department of Agriculture, State of South Dakota, was driving the automobile and was killed in the collision. Gary Dieren and Marilyn Vogel, occupants of the other automobile, were injured and they-- along with their parents-- instituted lawsuits to recover damages. The Dieren's, Vogel's, and Sharp's administrator are the defendants (appellees) in this declaratory judgment action.[1]
 
 
 2
 The District Court for the Northern District of Iowa held that appellant 'is liable to the Estate of Donald B. Sharp, in the event of judgment against the Estate, if any, pursuant to provisions of said policy,' and appellant has perfected an appeal to this court. The opinion of the trial court is reported at 219 F.Supp. 62 (1963).
 
 
 3
 The principal question which this litigation presents is whether employee Sharp was driving the insured automobile with the permission or consent of his employer, the named insured, at the time of the collision. This being a fact issue Rule 52(a), Fed.R.Civ.P. is applicable, and the findings of the trial court should not be set aside unless it is clearly demonstrated that they are without evidentiary support or were induced by an erroneous view of the law.[2] Hartford Accident and Indemnity Company v. Shaw, 8 Cir.,273 F.2d 133, 137 (1959).
 
 
 4
 It is equally fundamental that in our consideration of the sufficiency of the evidence we are required to accord to the prevailing party the benefit of all reasonable inferences which can be drawn from the evidence. Hartford Accident and Indemnity Company v. Shaw, supra, 273 F.2d at 137.
 
 
 5
 The pertinent facts were established by stipulation of the parties and by evidence in the main uncontroverted.
 
 
 6
 The policy-- covering a period from July 19, 1960, to July 19, 1961,-- named 'State of South Dakota, Department of Agriculture' as the insured; it protected against both bodily injury and property damage liability; it covered the stateowned automobile involved in the collision; it provided that the insured automobile was to be used for 'pleasure and business' purposes; and it designated that the automobile was to be principally garaged in Pierre, South Dakota.
 
 
 7
 The definition of the insured, the omnibus clause of the policy reads in part:
 
 
 8
 'With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.'
 
 
 9
 Since June 2, 1959, Sharp had been an egg and dairy inspector for the Department of Agriculture, State of South Dakota. The automobile involved in the collision had been assigned to him for use in connection with his duties. It had not been garaged in Pierre, South Dakota, but was kept at Sharp's home when not in use. It was stipulated that Sharp had permission of his superiors to attend the convention of Food, Drug, Feed and Fertilized Control Officials to be held at the Sheraton-Cataract Hotel in Sioux Falls, South Dakota, on July 26 and 27, 1960; that Sharp had permission to drive the automobile which he used in connection with his duties from his home in Highmore, South Dakota, to Sioux Falls, South Dakota, for the purpose of attending the convention.
 
 
 10
 Sharp left his home in the state-owned automobile at approximately 7 o'clock a.m. on July 25, drove his wife to her sister's home in Pierre, South Dakota, left to drive back to his home in Highmore at about 1 o'clock p.m., and at about 2 o'clock p.m. left Highmore for the convention at Sioux Falls. That evening the automobile was involved in the collision in the State of Iowa, about 2 1/2 miles southeast of the Iowa-South Dakota state line and approximately 16 or 17 miles southeast of Sioux Falls, South Dakota. Sharp's automobile was headed eastwardly on the highway at the time of the collision.
 
 
 11
 One Mr. Hilleshiem, who was Secretary of Agriculture of the State of South Dakota on July 25, 1960, testified that he instructed Sharp to attend the Sioux Falls convention, instructed him to drive the state-owned automobile to the convention; that he 'did not tell them (inspectors) where they were to stay, or where they had to stay at this convention * * * they could stay where they wanted to;' that he did not plan the route for the inspectors to take in traveling to Sioux Falls and that they could take 'any route they chose.' Hilleshiem further testified that Sharp was not required to be in Sioux Falls at any particular time before the convention convened on the morning of July 26.
 
 
 12
 There is a lack of unanimity among the authorities as to the legal test or theory to be applied in determining whether an automobile involved in an accident was being driven with the permission or consent of the named insured at the time of the accident within the meaning of the so-called omnibus clause of a policy. See and compare, Anno., 5 A.L.R.2d 600, 622, et seq.; 7 Appleman, Insurance Law and Practice, 4366-4368 (1962); Stoll v. Hawkeye Cas. Co. of Des Moines, Iowa, 8 Cir., 193 F.2d 255, 259 (1952).
 
 
 13
 The theories that have emanated from the decisions are categorized by the above authorities into three groups, viz.; (1) the strict or conversion rule; (2) the liberal rule; and (3) the moderate or minor deviation rule.
 
 
 14
 Under (1), the vehicle must be used for a purpose reasonably within the scope of the permission granted, within the time and geographical limits imposed or contemplated by the parties. 7 Appleman, Insurance Law and Practice, 4367; 5 A.L.R.2d 10, 12. Under (2), if the employee received permission in the first instance from the named insured to take the vehicle, any use thereof while it remains in the employee's possession is 'with permission' though that use may be for a purpose not contemplated by the named insured when he parted with possession of the vehicle. 7 Appleman, Insurance Law and Practice, 4366; 5 A.L.R.2d 10, 13. Under (3), a slight deviation from the scope of the permission granted will not be sufficient to exclude the employee from coverage under the omnibus clause, but a material deviation constitutes a use without the permission of the employer. 7 Appleman, Insurance Law and Practice, 4368; 5 A.L.R.2d 10, 15.
 
 
 15
 The parties agree that the Supreme Court of South Dakota has not as yet indicated which, if any, of the foregoing rules it will adopt.[3] But, for the approach taken by the South Dakota Supreme Court to a related problem, see Alberts v. Mutual Service Casualty Insurance Co., S.D., 123 N.W.2d 96 (1963). In Stoll v. Hawkeye Cas. Co. of Des Moines, Iowa, supra, 193 F.2d at 259, we stated that there was no reason to anticipate that the attitude of the Supreme Court of South Dakota in a case involving coverage under the omnibus clause of a liability policy would be any more favorable to the insurer than that, for instance, of the Supreme Court of Minnesota, and noted further that the latter court had adopted a more liberal view of the coverage of the omnibus clause than that which was contended for in the Stoll Case.
 
 
 16
 The trial court found as a fact that at the time of the collision Sharp was using the automobile for a purpose contemplated by and with the express permission of his employer. Upon careful analysis of the evidence and viewed in the light most favorable to appellees, we are satisfied that this finding has substantial evidentiary support, and that regardless of the rule which South Dakota might adopt, this finding was not induced by an erroneous view of the law.[4]
 
 
 17
 As we have seen, the automobile had been assigned to Sharp for his use as an inspector-- it was in his constant possession; he was directed to attend the convention and to use the automobile in making the trip; the inspectors, including Sharp, were not required to travel over the most direct route to Sioux Falls but could select any route they chose; they were not required to stay at a designated place-- in Sioux Falls or elsewhere-- while attending the convention: they were not required to arrive in Sioux Falls at any particular time but were expected to be present at the convening of the convention on the morning of July 26. Use of the automobile at the time of the collision was not in violation of any of the state travel regulations applicable to Sharp.[5]
 
 
 18
 We are mindful that at the time of the collision Sharp was approximately 16 or 17 miles beyond the convention city and that his automobile was headed in an eastward direction. Nevertheless, in view of the broad permission granted Sharp, we do not regard this circumstance as compelling a finding as a matter of law that the automobile was being used beyond the scope of authority and permission contemplated by the parties.
 
 
 19
 Incidental to the principal question raised in this controversy are two subsidiary contentions urged by appellant. Appellant first asserts that the trial court erred in considering and relying upon two depositions which were filed but not offered as evidence by any of the litigants. Appellees counter with the dual argument that (1) since such alleged error was not appropriately presented to the trial court in appellant's motion for a new trial, it cannot be raised on appeal, and that (2) the trial court's brief reference to these depositions was in no manner prejudicial to appellant, and that the error, if any, was harmless.
 
 
 20
 Aside from the question whether appellant, under these circumstances, should have given the trial court an opportunity to pass upon the 'deposition issue' in appellant's motion for new trial-- see and compare, Arkansas Valley Feed Mills v. Fox De Luxe Foods, 8 Cir., 273 F.2d 804, 809 (1960); Hartford Accident and Indemnity Company v. Shaw, supra, 273 F.2d at 140; Morgan Electric Co. v. Neill, 9 Cir., 198 F.2d 119, 122 (1952),[6] we have nonetheless given careful deliberation to appellant's belated argument, for if consideration of the unoffered depositions was not consistent with substantial justice, we would not hesitate to reverse the decision. After close scrutiny of the entire record, we are firmly convinced-- as previously shown-- that there is substantial evidence to support the judgment below, without considering the controverted depositions, and that, at the most, there is harmless error, resulting in no prejudice to appellant. See Pritchard v. Downie, 8 Cir., 326 F.2d 323 (1963); Builders Steel Co. v. Commissioner, 8 Cir., 179 F.2d 377, 379 (1950).
 
 
 21
 We have held that the burden of proving coverage under the omnibus clause is upon the one seeking such coverage, here the appellees. Hartford Accident and Indemnity Company v. Shaw, supra, 273 F.2d at 137. This principle was accorded recognition by the trial court in a pre-trial memorandum, and again at the outset of the trial. However, appellant contends that this ruling 'does not alter the fact that the trial Court's opinion discloses the burden was not in fact placed on the Appellees.' Appellant asserts that 'the trial court then assumes, erroneously, that an employee using a vehicle for personal purposes must reimburse the State, and concludes that since appellant introduced no evidence to show Mr. Sharp had not reimbursed the State in the past, the absence of such evidence proved he could use the car for private purposes, i.e., travel via an indirect route or interrupted travel.' See D.C., 219 F.Supp. at 64. Certain language in the opinion relating to the lack of evidence pertaining to requirements of the regulations may-- standing alone and out of context-- seem to lend some support to appellant's contention. But from the opinion in its entirety, it is clear that the trial court complied with its pre-trial order, and we are satisfied this assignment of error is lacking in substance.
 
 
 22
 Accordingly, we affirm.
 
 
 
 [1]
 Motor Vehicle Casualty Company was also named as a defendant. This company had issued a policy to Donald B. Sharp, on his privately owned automobile. The trial court ruled that this company was an excess insurer. Appellant has not controverted this holding on appeal, the issue is not before us, and Motor Vehicle Cas. Co. has filed no brief in this court
 
 
 [2]
 The case was tried below and is presented here on the theory that South Dakota law governs
 
 
 [3]
 Appellant claims that the 'minor deviation rule' would be adopted by the South Dakota Supreme Court
 
 
 [4]
 The trial court also found that 'even if there was not express authority, the deviation would be incident to the purposes of his employer, that is, travel to Sioux Falls for the convention. Also, there was evidence of such prior personal use of the automobile whereby it might be inferred that it was being acquiesced in.' D.C. 219 F.Supp. at 65
 We need not reach this finding as to implied authority or as to deviation.
 
 
 [5]
 The duly approved South Dakota travel regulations provide in part that an employee who for his 'convenience travels by an indirect route or interrupts travel by direct route' must bear the extra expense himself. They also provide that 'in the performance of routine official business' travel within states bordering South Dakota 'not exceeding twenty-five (25) miles from The South Dakota boundary lines shall be considered as in-state travel.'
 These and other sections of the regulations are mentioned in the opinion below, are argued pro and con by both parties, and have received our careful consideration. But apart from the regulations, in our view there is substantial evidence to support the finding that Sharp was acting within the express permission granted him by his superiors.
 
 
 [6]
 In Arkansas Valley and Hartford, we again announced that an appellant cannot for the first time in an appeal raise an issue that was not presented to the trial court and upon which the trial court had no opportunity to pass. In Morgan, the Ninth Circuit stated that: 'On a motion for a new trial the losing party should not be compelled (as the price of maintaining his objections to court rulings on a later appeal) to again present all of his previous objections * * *.' 198 F.2d at 122