STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, PLAINTIFF-RESPONDENT, v. ZURICH AMERICAN INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND DESKIN T. KNOLL AND DOROTHY N. KNOLL, DEFENDANTS-APPELLANTS, AND STEVEN JOHNS AND JOSEPH W. JOHNS, DEFENDANTS-APPELLANTS, AND A. RODMAN KAY, A MINOR, BY HIS FATHER AND GUARDIAN *AD LITEM*, ALBERT KAY, AND ALBERT KAY, INDIVIDUALLY, DEFENDANTS-APPELLANTS.

Argued October 11, 1972—Decided January 22, 1973.

158

*Mr. Joseph H. Kenney* argued the cause for defendants-appellants Steven Johns and Joseph W. Johns (*Messrs. Archer, Greiner & Read*, attorneys).

*Mr. Raymond W. Uliase* argued the cause for defendants-appellants Knoll (*Messrs. Uliase & Uliase*, attorneys).

*Mr. Edgar E. Moss II* argued the cause for plaintiff-respondent State Farm Mutual Automobile Insurance Company (*Messrs. Moss & Powell*, attorneys).

*Mr. G. Wesley Manuel, Jr.* argued the cause for defendants-respondent Zurich American Insurance Company (*Messrs. Kisselman, Deighan, Montano & Summers*, attorneys).

*Mr. James J. Casby, Jr.* made an appearance and was heard on behalf of the Unsatisfied Claim and Judgment Fund Board and filed a Statement in Lieu of Brief (*Messrs. Casby & Garrigle*, attorneys).

The opinion of the Court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. This appeal originated in an action for declaratory judgment tried in the Law Division without a jury. Implicated in the issues framed by the complaint and the cross-claim of the defendant insurance carrier are the coverage clauses of two automobile liability policies in relation to an accident occurring March 16, 1969 wherein an automobile owned by one Thomas Busby III ("Busby") and driven by defendant Steven Johns ("Johns") collided with one driven by defendant Deskin T. Knoll as a result of which the latter, Johns, and defendant A. Rodman Kay ("Kay") sustained personal injuries. Plaintiff ("State Farm") had issued a policy on the Busby car and defendant Zurich American Insurance Company ("Zurich") one on a car owned by defendant Joseph W. Johns, father of Steven Johns. Actions for damages against Johns by the Knolls and Kay are pending.

The Law Division found that neither insurance policy covered Johns as an insured and entered judgment accordingly. The Appellate Division, 118 *N. J. Super.* 84, affirmed that judgment. On petition for certification by the Johnses, joined in by the Knolls, this court granted certification. 60 *N. J.* 468 (1972). The Notice of Petition for certification had recited that it would request review of "the Final Judgment of the Appellate Division". The petition itself, however, expressly avers that it "is directed only toward the interpretation that the Court has given to the language contained in the Zurich policy". Consequently, although State Farm had been served with a copy of the Notice of Petition, a dispute arose at the argument as to whether the liability of both insurers was properly before this court or only that of Zurich. We directed that the meritorious issues relating to both policies be argued, reserving judgment on the dispute subject to consideration of supplementary memoranda on the point to be submitted. We have decided that the liability of both insurers should be determined, but our reasons

will be better understood if we first outline the general nature of the meritorious issues presented.

Preliminarily, we briefly delineate the basic fact pattern, reserving fuller detail for later development. Busby and Johns were friends and high school classmates, Busby 17 and Johns 16½ years of age. Johns was not licensed to drive. On the day of the accident they had spent some time together at the Busby farm, and Busby was to drive Johns home in Busby's Thunderbird. They decided first to stop at a "7–11" shop for a soda, and on the way they met Kay, aged 17, a member of the same high school class, who was driving his own Pontiac. Kay decided to join them at the 7–11 shop. They arrived at the shop together and parked their cars alongside each other. Busby asked Kay whether he might drive the latter's car and Kay assented. Shortly after Busby drove off, leaving his own car parked with the keys in the ignition, Johns and Kay entered the Busby car, Johns in the driver's seat. After a short discussion concerning the Busby car Johns started the car and drove off with Kay riding as a passenger. A few minutes later the accident took place.

The State Farm policy (covering the Busby car) recited that with respect to an owned automobile the word "insured" included:

"(4) Any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission * * *."

The Zurich policy (covering Johns' father's car) included as an insured, with respect to a nonowned automobile:

"(2) Any relative, * * * provided his actual operation or (if he is not operating) the actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission * * *."

After taking testimony and receiving in evidence certain depositions the Law Division judge concluded, as a matter

of fact, that Johns had neither express nor implied permission from Busby to drive the Busby car and that therefore the State Farm policy did not cover Johns as an insured. In so finding the judge recognized that under *Selected Risks Insurance Co. v. Zullo,* 48 *N. J.* 362, 373 (1966), any motor vehicle liability policy submitted by a New Jersey owner in order to register the vehicle as an insured one must be construed as affording coverage of users of the car at least as broad as the requirement of *N. J. S. A.* 39:6–46(a), *i. e.,* to "the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured * * *".

In dealing with the Zurich policy, the trial judge did not allude to that part of its covering language which reads: "* * * provided his actual operation or [actual use] is with the permission, * * * of the owner", probably for the reason that it was implicit that his finding of absence of express or implied consent of the insured (owner) in relation to the State Farm policy was also applicable to the just mentioned language of the Zurich policy. The judge did, however, construe the added Zurich covering language, "or reasonably believed to be with the permission of the owner", and as to it he held that it "should probably be accorded the same effect" (as the State Farm policy) "that is, providing coverage where the use is with the implied consent of the owner". He went on to say, "coverage, it would seem, should not depend solely on someone's state of mind. Rather, the question should be whether when considering all the circumstances, a reasonable man could believe he had the owner's consent". Finding that criterion not satisfied, the judge concluded that Johns was equally not an insured under the Zurich policy.

The Appellate Division held that the Law Division factfinding of absence of implied permission from Busby to Johns was supportable under the facts and the law and that the holding as to the State Farm policy should therefore be affirmed. 118 *N. J. Super.,* at 92. As to the Zurich policy,

the Appellate Division concluded that the "reasonably believed" language therein did not differ materially from the notion of "implied consent" in the context of a case where, as here, the driver had had dealings only with the owner of the vehicle. It did think that the language might be effective to broaden coverage in relation to sub-permittees in a jurisdiction entertaining narrower concepts than those of our own courts as to the incidents of the "initial permission rule". *Id.,* at 94. (See *Odolecki v. Hartford Accident & Indemnity Co.,* 55 *N. J.* 542, 549–550 (1970)). It therefore found no prejudice to Johns resulting from the trial court's having equated the legal effect of the pertinent clauses of the two policies. It felt that Johns "could have had no ground reasonably to believe that he had permission to operate the car on the highway". 118 *N. J. Super.,* at 95.

## I

We deal first with the question whether the issue of State Farm's liability is properly before us, that party asserting it is not. It relies upon the fact that, as noted above, the petition for certification expressly purports to be directed only to the Zurich policy and that the argument set forth therein is limited to an attack upon the construction by the Law Division and the Appellate Division of the "reasonably believed" clause in the Zurich policy defining coverage as to nonowned automobiles. The Johnses accede to that contention, disclaiming any intent at this posture of the cause to seek a ruling for coverage under the State Farm policy.

The Knolls, who joined in the petition (although not signing the Notice of Petition), however, as well as Zurich and the Unsatisfied Claim and Judgment Fund Board, rely upon the facts that the Notice of Petition for Certification is addressed to the whole of the Appellate Division judgment and that the order granting certification was unqualified. They cite *R.* 2:12–3 which provides that where certification is sought to review a final judgment of the Appellate

Division the notice of petition shall in civil actions "designate the judgment or part thereof sought to be reviewed", no such requirement being specified for the petition itself; and also *R.* 2:12–11, providing that "[i]f certification is granted, * * * the petitioner's entire case shall be before the Supreme Court for review unless the Supreme Court otherwise orders * * *". The Knolls argue, further, that the restrictive statement in the petition recited above was intended only to "focus" upon the special issue thought particularly to warrant certification and not to abandon the claim as against State Farm.

Putting to one side the status of the Unsatisfied Claim and Judgment Fund Board in this case, the position of the Knolls and of Zurich seems to us to have sufficient color of merit to warrant our taking the issue of State Farm's liability in the interests of a fair resolution of the entire controversy projected below. From what has been said above, moreover, it is apparent that one of the issues in relation to Zurich's liability is identical with that involved under the State Farm policy, *i. e.,* whether Johns' use of the car was with the permission of Busby, express or implied. State Farm is not prejudiced as it was served with the Notice and Petition for Certification and has been afforded full opportunity to be heard on the merits.

## II

We turn next to the question we have just ruled we will decide — whether the trial court determination that Johns' use of the Busby car was not with the implied "permission" of Busby, within the coverage of others' use of the insured car under the State Farm policy, should be sustained. (Disposition of this issue will automatically also settle the question of coverage under the Zurich policy insofar as it extends, in reference to nonowned automobiles, to use by a relative of the insured with the "permission" of the owner).

We first refer to, and incorporate herein by reference, the findings of fact made by the trial court and set forth in full in the Appellate Division opinion at 118 *N. J. Super.*, at 89–90. These findings were based upon testimony given at the trial by Busby and Johns and depositions taken before trial, and admitted into evidence without objection, from Johns and Kay. So as to afford the most complete picture of the facts for purposes both at the present point of this opinion and that which follows, concerning the "reasonably believed" clause of the Zurich policy, we supplement the trial findings with the following references to the proofs not specifically alluded to therein.

Both Johns and Busby testified that the Busby car — a 1956 Thunderbird — was considered a "classic" or "collector's item". It was a type which excited the admiration and interest of youths. Johns said he had worked on it with Busby, including the day of the accident (which Busby denied). He and Busby were "very close friends — we did a lot of things together", although he was less emphatic about this on deposition. He felt it would be "all right" to drive the car; that Busby would have no objection because they were close friends. He had helped Busby clear burned timber from the Busby farm earlier that day. Although he knew he had no legal right to drive the car without a license, "it was just the custom * * * I went along with what everyone else did". He said: "* * * friends, within my crowd * * * on occasion they drove each other's cars". Kay testified that it was customary between him and his friends to drive each other's cars. He had previously let Johns drive his own car (although Johns had no car). But Kay said he did not know Johns' age. He also said that during the drive Johns told him he had driven the car before with Busby's permission. But Johns admitted he had not driven the car before on a highway; he had been in it only twice before the day of the accident. Kay testified he had never seen or been in Busby's car before.

Kay testified he had known Busby previously (Johns had a contrary impression). Johns may have gotten into the car first, while Kay was having a soda. In any case, they were sitting in the car together discussing the motor of the vehicle when Johns turned on the ignition, apparently without a word between them relative to using the car, and drove off. Kay said this was entirely Johns' idea, not his. Johns testified he merely wanted to "take it for a spin", intending to meet Busby on the latter's way back from his ride in Kay's car.

■■ There is a broad consensus of legal authority as to the basic meaning of "implied permission" (or "consent") of an insured owner of an automobile or his authorized agent to another user of the vehicle, for purposes of omnibus clause coverage, at least in the situation of a first permittee. Generally speaking, it is said to mean "an inferential permission, in which a presumption is raised from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent". 7 *Appleman, Insurance Law and Practice,* § 4365, p. 303 (1942). See also 7 *Am. Jur.* 2d, *Automobile Insurance,* § 113, pp. 425–27 (1963); 45 *C. J. S. Insurance* § 829, pp. 896–898 (1946); *Penza v. The Century Indemnity Co.,* 119 *N. J. L.* 446, 449 (E. & A. 1938). We are not here concerned with doctrinal disputes as to when implied permission can be inferred as between the named insured and a second or later permittee, as to which there is a plenitude of diverse authority elsewhere. *Annot., 4 A. L. R.* 3d 10 (1965). That area is concluded by our own holdings that if the first user in fact has permission from the named insured, lack of permission, express or implied, of such named insured for use by a later permittee is irrelevant to coverage, short of theft or the like. *Odolecki v. Hartford Accident & Indemnity Co., supra.*

■ A good capsule definition of "implied permission", for present purposes, is that stated in *American Universal Insurance Company v. Dykhouse,* 219 *F. Supp.* 62, 66 (N. D. Iowa 1963), aff'd 326 *F.* 2d 694 (8 Cir. 1964): "Implied

permission is actual permission circumstantially proven." Accord: *Traders & General Ins. Co. v. Powell,* 177 *F.* 2d 660, 666 (8 Cir. 1949). The essence of the concept is that from all the surrounding circumstances a fact-finder could reasonably conclude that the use by the putative permittee was not contrary to the intent or will of the alleged permitter. The strong public policy of this State for liberal construction of liability insurance to effect the broadest range of protection to users of the highways, see *Matits v. Nationwide Mutual Ins. Co.,* 33 *N. J.* 488 (1960), would require allowance of a finding of implied permission notwithstanding that, as here, the occasion of the use by the alleged permittee was one of first instance, providing the totality of the attendant circumstances was susceptible of the requisite inference of a willing mind of the permitter. See *Pettis v. State Farm Mutual Automobile Ins. Co.,* 286 *Ala.* 344, 239 *So.* 2d 772, 775 (Sup. Ct. 1970).

Nor is the fact that Johns had no license conclusive against an inference of implied consent. 12 *Couch, Insurance* 2d § 45:347, p. 351 (1964). It is but a factor to be weighed by the fact-finder, although mayhap an influential one.

Appraising the evidence before the trial judge against the law just outlined, we cannot conclude that his ultimate determination of absence of implied permission of Busby to Johns for the use of the car under the attendant circumstances was without adequate support in the record. *State v. Johnson,* 42 *N. J.* 146, 161–162 (1964). Nor do we find any mistaken assumption as to the controlling law in the present regard in the opinions of either the Law Division or the Appellate Division. The judgment of the Appellate Division concerning absence of liability of State Farm on said issue is therefore affirmed. By the same token, we hold to the same effect in respect of the simple "permission" criterion of the nonowned vehicle coverage clause of the Zurich policy.

## III.

██ We are thus brought to consideration of whether there was error below in the construction and application of the "reasonably believed" portion of the clause in the Zurich policy providing nonowned vehicle coverage for relatives of the insured. We conclude that there was.

We find ourselves unable to agree with the determinations of the tribunals below that, in the context of a one-step relationship between owner and user as of the time of the accident (118 *N. J. Super.,* at 94, 95), the covering language, "or reasonably believed to be with the permission of the owner", is not significantly broader in scope than "with the permission" of the owner or named insured, as the case may be.

In the first place, the draftsmen of the Zurich nonowned vehicle clause obviously intended a broader coverage for the "reasonably believed" language when they wrote: "provided his actual operation * * * is with the permission, *or* reasonably believed to be with the permission, of the owner * * *". (Emphasis added.) If all that was contemplated was simple permission, express or implied, as conventionally understood, the disjunctive clause is meaningless surplusage. There is also the obvious contrast with the standard omnibus insured language as to the owned automobile contained in the Zurich policy (not heretofore quoted). Thus, even under standard principles of contract construction, let alone the special rule for construction of liability insurance policies favorably to coverage whenever reasonably possible, see *Bryan Const. Co., Inc. v. Employers Surplus Lines Ins. Co.,* 60 *N. J.* 375, 377 (1972), we must find that Zurich intended a more liberal effect, favorable to coverage, by the "reasonably believed" language than that which would obtain as to the standard language requiring permission. A concordant view was voiced by the court in *Nationwide Mutual Insurance Company v. Vaughn,* 307

*F. Supp.* 805, 807 (W. D. Va. 1969), aff'd 427 *F.* 2d 715 (4 Cir. 1970). *Cf. Truelove v. Nationwide Mutual Insurance Co.,* 5 *N. C. App.* 272, 168 *S. E.* 2d 59 (Ct. App. 1969).

There is no bar, of course, to an insurer providing coverage in excess of or broader than that which is mandatory under the Motor Vehicle Security-Responsibility Law. See *N. J. S. A.* 39:6–46 (penultimate paragraph).

There is evidence that nonowned vehicle coverage clauses identical with that here involved are becoming frequent. See *Carlsson v. Pennsylvania General Insurance Co.,* 214 *Pa. Super.* 479, 257 *A.* 2d 861, 866, n. 3 (Super. Ct. 1969), aff'd 438 *Pa.* 553, 265 *A.* 2d 520 (Sup. Ct. 1970); *Selected Risks Insurance Co. v. Zullo, supra,* 48 *N. J.* at 365. It may perhaps be deduced that this derives to some degree from customer demand based upon the understandable desire of insureds to be, and to have their relatives, broadly protected when driving nonowned vehicles in circumstances where they cannot readily be sure as to the scope of insurance coverage on the vehicle being driven or as to the extent of the authority of the person permitting them to drive such cars. Compare *Carlsson v. Pennsylvania General Insurance Co., supra,* 257 *A.* 2d, at 865–866; *Maryland Casualty Company v. Hassell,* 426 *S. W.* 2d 133, 138–139 (Ky. Ct. App. 1968). Note also the dissenting opinion of the Chief Justice in *Baesler v. Globe Indemnity Co.,* 33 *N. J.* 148, 156 (1960), overruled, *Odolecki v. Hartford Accident & Indemnity Co., supra,* 55 *N. J.* at 550, in relation to the weight which should be accorded the probable intent of the purchaser of the policy as to the extent of coverage.

Further evidence of special liberality in construing nonowned coverage clauses is found in the *Hassell* case, *supra.* The court there pointed out that in extending its coverage on the owned vehicle the insurer does not bargain for risks beyond those in contemplation by the insured in giving permission, the company relying on the judgment and discretion

of the insured in giving permission.[1] "But when the driver
of an automobile, by whomsoever it may be owned, is the in-
sured himself, he is the same man on whose skill and judg-
ment the company relied." (426 *S. W.* 2d at 138). Aside
from theft, therefore, the insurer is not too much concerned
with the nature of the permission granted its policyholder
by the owner. *Ibid.* Although not to the same degree, that
rationale is also somewhat relevant to the "relative" of the
insured permitted by the policy to use a nonowned automobile,
as contrasted with the unlimited class of persons who under
the standard omnibus clause may use the owned automobile
claiming permission of the owner.

█ Being thus of the view that the "reasonably believed"
language in the nonowned vehicle coverage clause is broader
in scope than that of "with permission", or the like, we pur-
sue the question as to the nature of the difference. In the
first place, the latter formulation calls, essentially, under
the authorities cited in II of this opinion, for an inquiry
as to the inferable state of mind of the alleged permitter. Do
the circumstances imply a willing state of mind toward use
by the permittee? The former criterion, on the other hand,
focuses rather on the state of mind of the claimed permittee.
Did *he* in fact believe, with reason, that the owner was thus
willing, whether or not the fact-finder would conclude from
the circumstances that the owner was actually willing. A
second aspect of the difference, as we see it, is that the rea-
sonableness of the claimed permittee's belief that the owner
is willing, under the Zurich clause, is not necessarily mea-
sured by the belief of the "reasonable man" envisaged by
the trial judge in this regard. The test is, rather, the

---

[1]We do not imply this concept is congruent with New Jersey law.
The case is cited only to support the rationale for more liberal con-
struction, generally, of nonowned vehicle clauses than owned vehicle
clauses. In *Hassell* the court gave broader effect to a nonowned ve-
hicle clause than to the owned vehicle clause of another policy in-
volved in the case although the permission language of both was
substantially the same.

reaction of a reasonable boy of Johns' age, personality and social milieu, subject to such attendant influences on his judgment and mind as may be credibly discerned from the proofs. *Cf. Bucuk v. Edward A. Zusi Brass Foundry,* 49 *N. J. Super.* 187, 211 (App. Div. 1958), certif. den. 27 *N. J.* 398 (1958).

Since, in making his findings of fact, the trial judge did not apply the principles of construction of the "reasonably believed" clause of the Zurich policy which we have found properly applicable thereto, and since we think a fact-finding favorable to coverage of Johns under that concept of the insurance policy is fairly possible from the evidence, there must be a reversal of the Appellate Division judgment of affirmance as to that carrier and a remand for retrial of the issue as to coverage of Johns as an insured under the Zurich policy.

## IV

A final question is presented by the insistence of the Unsatisfied Claim and Judgment Fund Board that both carriers should be held liable on the theory that the facts warrant application of the initial-permission rule in its subpermittee variation (see *Odolecki v. Hartford Accident & Indemnity Co., supra*). The suggestion is that Kay had implied reciprocal permission from Busby to use the Busby car which he exercised by allowing Johns to drive it and occupying it himself as a passenger during the brief excursion. This, it is proposed, makes Johns a covered insured through the permission of Kay.

The views of the writer of this opinion as to the appropriate disposition of this contention differ from those of the majority, as expressed in the partly concurring opinion of the Chief Justice, and they are stated herewith.

## A

I think the issue is not properly before the court and should not be entertained.

As noted above, the Board was not a party before either prior tribunal. While an appearance by the attorney for the Board is noted in the transcript of the trial, no participation by that attorney in the trial of any nature is noted therein. The stated issue has never been raised by any party and was neither tried nor passed on by the Law Division nor considered by the Appellate Division.[2] The Board merely wrote a two-page letter to the Appellate Division (conceding it was not a party to the cause or the appeal) raising the question in skeletal style in one short paragraph. The Board might have filed an application to intervene as a party on the appeal, see *Oxford Consumer Dis. Co. of N. Phila. v. Stefanelli,* 104 *N. J. Super.* 512, 516 (App. Div. 1969), aff'd as modified on other grounds, 55 *N. J.* 489 (1970), and filed a proper and adequate brief on the point if admitted, but it failed to seek recourse to such orderly procedure. Neither the parties nor the court were necessarily called upon to notice or respond to the letter.

Before this court, still without leave to intervene as a party, or to file any new argumentative document, see *R.* 2:12–11, the Board filed a summary "Statement in Lieu of Brief" of no more substance than the letter to the Appellate Division.[3] Although the question was peripherally adverted to at the argument by the Board and some members of the court alluded to it, no party to the appeal argued it pro or con. I think no party adverse in interest to the Board's position on the point was bound to take notice of and respond to a substantive contention in its Statement if not directed to do so by the court. In fact none has done so.

Despite the foregoing, if I thought a substantial, meritorious issue were tendered I might be moved to take it and

---

[2]Generally points not raised below may not be argued on appeal. *Berg v. Reaction Motors Div.,* 37 *N. J.* 396, 418 (1962).

[3]While the Board is a public body which, were it a party, would be entitled to file a statement "as to why a brief is not filed," *R.* 2:6–4, the rule is not designed ordinarily to permit presentation of substantive argument in such form.

excuse the deficiencies noted. But, for reasons about to be advanced, I do not believe the interests of justice require our adoption of that course.

B

With all deference, I conceive that the delineation in the concurring opinion of the added issue to be decided by the fact-finder on the remand is not in accord with the law declared by the prior pertinent decisions of this court; and I believe the rationale of the prior decisions should not be extended in the absence of legislative authorization.

The basic metes and bounds of the initial-permission rule have been comprehensively expounded in the two opinions of Justice Proctor for the court in *Matits v. Nationwide Mutual Ins. Co.* and *Odolecki v. Hartford Accident & Indemity Co.*, both *supra*. The essence of the rule was stated in the following paraphrase in *Odolecki, 55 N. J.* at 546–547 of the formulation in *Matits*:

"* * * Accordingly, we held that if a person is given permission to use a motor vehicle in the first instance, *any* (emphasis by the court) subsequent use short of an unlawful taking *while it remains in his possession* (emphasis mine), is a permissive use within the standard omnibus clause in an automobile liability insurance policy regardless of any restrictions given by the named insured. * * *."

By the requirement, "while it remains in his [the first permittee's] possession", the court took pains to make explicit what I think would on principle have been implicit anyway — that before permission can be said to flow from the owner or named insured to the third-person-driver through the alleged initial permittee the latter must be found from the circumstances to have assumed charge of or dominion[4] over the car *pursuant to* the owner's permission and to

---

[4] The semantics of the language used is unimportant. The underlying concept can be expressed in terms of possession, taking charge or control, dominion, or the like. The gist of the thought is that the initial permittee is undertaking to deal with the vehicle pursuant to the permission given him.

have remained in that relationship to the vehicle while allowing the third person to drive it. If those facts are found, the driver is covered by the policy. The coverage would then apply even if the initial permittee allowed the sub-permittee to drive off by himself, since the consequent use would still be under the *aegis* of the first permittee who had provided the essential link between owner and driver by his intervening acceptance of the permission to use tendered by the owner. See *Butler v. Bonner & Barnewall, Inc.*, 56 *N. J.* 567 (1970), where coverage was recognized on a factual hypothesis such as last stated although the court restated with approval the remain-in-possession requirement of *Matits* and *Odolecki* quoted above. *Id.* at 574.

The application of the foregoing thesis to the fact-complex before us is this. First, I agree that a fact-finder could find that Busby impliedly offered Kay permission to use his car. But that offer is irrelevant to coverage of Johns through Kay if Kay never accepted the offer by taking charge of the car.[5] The arrangement of permission and use is a mutually consensual one. If the implied offer is never acted on, it hangs in the void disconnected from the developing transaction, and any subsequent use of the car cannot be said to be related to it. If these considerations are ignored, any remaining significance in the requirement of permission in the policy becomes substantially dissipated, and I cannot conceive that the law of this State extends that far since the statute, as recognized in *Selected Risks Insurance Co. v. Zullo, supra,* 48 *N. J.* at 373, still permits the insurer to condition coverage on *the use of the car being "with the express or implied consent of the insured * * *"*. *N. J. S. A.* 39 :6–46 (a). The essence of the initial-permission rule, as I see it, is that violations of restrictions by the owner as to

---

[5] It is of course not suggested that it must be shown that Kay signified acceptance by an express avowal thereof. It would suffice if the fact were fairly inferable from the totality of the attendant circumstances.

scope or nature of use are immaterial to coverage, not that there is to be any dispensation of the requirement that *use be pursuant to* the permission initially extended by the owner.

Therefore, if Kay, disrgarding or perhaps not even thinking or conscious of Busby's implied offer, merely sat in the car alongside of Johns and chatted with him in order to pass the time pending Busby's return, he could not be regarded as ever having accepted or acted upon the offer, even if he did not protest Johns' taking off with the vehicle.[6]

I agree with the partly concurring opinion to the extent that it says that the critical question is whether "Kay was a party in interest in the drive", but only if that language is consistent with the understanding that Kay had first taken charge of the car pursuant to the implied offer. But if Kay did not do that, and accompanied Johns on the understanding that Johns was driving under whatever authority the latter had from Busby or on his own initiative (particularly if Johns did not regard his driving as being by leave of Kay as opposed to that of Busby directly), it would in my view be immaterial whether, in the language of the partly concurring opinion, "Kay wanted the ride or was only an indifferent passenger." In other words, Kay's mere wanting to accompany Johns on a ride Johns was undertaking on his own initiative or by authority of Busby, without dependence on leave by Kay, is, taken alone, irrelevant in terms of use under the umbrella of implied permission from Busby to Kay.

Thus, were I in agreement with the remand as to this issue at all, I would direct the fact-finder to determine whether

---

[6]Since the intent of any implied offer, as recognized in the concurring opinion, would be for Kay to "try out" Busby's car, which sensibly means to drive it, it is difficult to infer an intent by Kay to accept the offer by merely sitting in the passenger's seat (although I recognize that, as a matter of law, *if* Kay could be regarded as having taken "possession", in the *Matits-Odolecki* sense adverted to above, it would make no difference whether he or another drove).

Kay was impliedly tendered permission by Busby to use the car and if so whether he accepted that tender by taking charge of the vehicle and permitting Johns to drive it. If the findings were in the affirmative coverage would obtain under both policies. Otherwise not, so far as the initial-permission rule is concerned.

## C

Against the concept of the law set forth in B, *supra,* it appears to me that any reasonable appraisal of the proofs offered at the trial calls for the conclusion as a matter of law that the criteria for coverage under the initial-permission rule do not here exist. Nor do I see any purpose grounded in considerations of substantial justice in remanding for further exploration of the facts. All aspects of the basic transactions involved were explored at the trial by direct and cross-examination of all witnesses with knowledge of the facts. It seems clear that only by contradiction or gross modification of trial testimony by Johns or Kay or both could a basis for finding liability be erected on a remand — and that necessarily at the cost of reliance on testimony that would be suspect as to credibility either for the reason just stated or because strongly *post-litem motam.* It should be remembered that Kay has an action pending against Johns, and presumably he as well as Johns wants coverage here.

I assume for present purposes that the fact-finder would find an implied offer by Busby for Kay to use the Busby car. But in relation to the critical questions of acceptance of the tender by Kay and his supposed subdelegation of permission to Johns we find the following situation. There was nothing said as between Busby and Kay as to any use of the Busby car by Kay. Kay testified he and Johns entered the car, Johns perhaps first. There was no discussion between them up to that point. After they were seated therein, they talked about the motor of the Busby car. Then Johns took off. This was Johns' idea, not Kay's. During the drive

Johns told Kay he had driven the car before by Busby's permission. It does not appear whether this was volunteered or in response to an inquiry by Kay. But it does not matter which. The foregoing was apparently the totality of the conversation between the two, the accident occurring a couple of minutes later. (Johns remembers no other conversation.)

Johns' testimony essentially meshed or was consistent with that of Kay as to the foregoing circumstances.

It is clear to me that Kay was simply sitting in the car waiting for Busby to return. When Johns drove off, Kay acquiesced, thinking that Johns probably had permission from Busby, with whom he had just been traveling. Kay had no particular interest in being transported on the short jaunt. There is no evidence whatever that he had entered the car for that purpose or evinced any such desire thereafter. Moreover, it is as plain as can be that so far as Johns was concerned he drove off with the car either on his own initiative or his belief that it would be acceptable to Busby for him to do so. There is not the remotest suggestion that he thought he was driving by permission or leave of any nature from Kay; or, indeed, that Kay had any such thought.

In sum, the fact-picture presented affirmatively and conclusively negates any postulate that Kay ever acted on the implied permission to use the car arguably extended to him by Busby, much less that Johns was driving under Kay's leave or auspices or by his wish.

I therefore conclude that the issue of coverage under the initial-permission rule does not belong in this case.

Turning now from expression of my own views to state the court's disposition of the appeal, the judgment of the Appellate Division in relation to State Farm on the issue of coverage of Johns by permission of Busby is affirmed; the judgment in relation to Zurich on the issue of coverage under the "reasonably deemed" portion of the nonowned vehicle clause is reversed; and the cause is remanded for retrial as to Zurich on the latter issue and as to State Farm on the issue of coverage under the initial-permission rule as

framed by the partly concurring opinion of the Chief Justice for the majority.

Justice HALL joins in the entirety of this opinion. Justice MOUNTAIN joins in I, II and IV thereof. The Chief Justice, Justice JACOBS, Justice PROCTOR and Judge SULLIVAN join in I, II and III thereof.

WEINTRAUB, C. J. (concurring in part). We join in the opinion of Judge Conford with respect to defendant Zurich American Insurance Company subject to a comment hereinafter made, but we conclude that there should also be a retrial of the case with respect to State Farm Mutual Automobile Insurance Company.

In dealing with the omnibus clause, we should be mindful of several considerations which call for an expansive view of its coverage.

The insured has plenary authority to decide whether to permit another to use the covered vehicle. The carrier is bound by the insured's decision, and the amount of the premium does not depend upon how extensive or restrained are the insured's actions in that regard. Thus viewed, the omnibus clause is for the benefit of the insured rather than the insurer, the carrier's liability turning wholly upon whether the insured did or did not, in his sole discretion, choose to permit another to use the car.

And permission involves no specific ritual. It may be given most casually, and may readily be implied from circumstances, especially when the actors are friends and the use involved is quite small. Ordinarily an insured would want his friends to be covered. That fact remains cogent, even if the insured is unable to say categorically that the operation was with his permission or consent. Weight must be given to the relationship of the parties and to the probabilities which that relationship would normally generate. When friends are involved, a court should lean toward a finding of coverage because such a finding, more likely than not, will accord with the unspoken truth.

Another factor strongly supporting an expansive view of the omnibus clause is the public concern for the victims of automobile traffic. It is in part for their protection that a policy of automobile liability insurance must contain an omnibus clause at least as favorable for coverage as the omnibus clause[1] specified in *N. J. S. A.* 39:6–46(a). *Selected Risks Insurance Co. v. Zullo*, 48 *N. J.* 362 (1966); see also *Matits v. Nationwide Mutual Insurance Co.*, 33 *N. J.* 488, 495–496 (1960). The public interest is advanced when doubts are resolved in favor of those victims.

Our decisions in this area are discussed in a comprehensive opinion in *Odolecki v. Hartford Accident and Indemnity Co.*, 55 *N. J.* 542 (1970). The coverage issue may arise in sundry settings. The simplest is when it is claimed the driver received permission or consent directly from the owner. In the case now before us the parties assumed the question was whether Busby had thus impliedly permitted Johns to drive the Busby car. It will be recalled that Busby and Johns arrived at the 7-11 store in Busby's car; that Busby asked Kay if he could take Kay's car on a short spin; that Kay permitted Busby to do so; that Busby left the keys in the ignition of his own car; that Johns and Kay later entered Busby's car; that Johns, who was in the driver's seat, took off with Kay in Busby's car for a ride of a like brevity.

The trial court found that Busby had not given implied permission to Johns. But the parties overlooked the fact that Kay's presence in the car raised the further question

---

[1] *N. J. S. A.* 39:6–46(a) requires a policy to insure "any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured." The State Farm policy provides that the word "insured" includes "any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission." This policy provision may not be read more narrowly than the statutory provision.

whether Kay had Busby's permission to use Busby's car and whether Johns' operation was in furtherance of that use. The trial court made no finding with respect to that phase of the factual complex.

As the record now stands, the trier of the facts could readily find that Busby impliedly gave Kay permission to try out Busby's car if Kay wished to do so. These boys were intensely interested in automobiles, a familiar phenomenon at their age. Busby and Kay each owned a car of some distinction. Busby having sought a chance to drive Kay's car, and having left the keys in the ignition of his own car, we would infer that Busby by implication extended the same courtesy to Kay. And if Kay was thus using the car, it would not matter whether Kay or Johns was the driver. The car would then be put to the use which Busby had by implication permitted Kay to make of the car, and that being so, Johns would be within the omnibus clause, and indeed would be within it even if Busby had directed that Johns shall not drive. See *Baesler v. Globe Indemnity Co.*, 33 *N. J.* 148, 153–154 (1960); *Small v. Schuncke*, 42 *N. J.* 407 (1964).

We think the critical question on this facet of the case is whether Kay was a party in interest in the drive, that is, whether Kay wanted the ride or was only an indifferent passenger. The trier of the facts must look to the total circumstances to decide whether by implication Kay was thus a participant. If Kay was thus a party to that use of the car, then Johns too would be covered, for, as we have said, the use to which the car was being put would remain a use which Busby had impliedly permitted Kay to make even if Johns was not permitted by Busby to drive the car.

We do not think it appropriate to require a finding that Kay "accepted" an offer of permission to use the car or that Kay assumed "possession" or "dominion" of the vehicle, or that Kay consciously exercised some act of subdelegation of permission. Those concepts, however useful in other settings, would merely encumber the inquiry. The

question is simply whether the use to which the car was put was impliedly permitted by Busby. If Busby permitted that use by or for Kay and it was so used, it does not matter that Johns simultaneously enjoyed the experience. The contractual concept of offer and acceptance is foreign to this scene. So, too, are the concepts of "possession" and "dominion"; "permission" depends upon neither. "Possession" and "dominion" are merely ultimate conclusions expressing a final result in some inquiry in which "possession" or "dominion" is relevant. Neither would be a meaningful guide in an inquiry as to whether the use of a car was with permission.

The factual determination should not, however, be made on the present record, for the parties did not zero in upon this phase of the permission issue. It may be that testimony directed to that subject will be more revealing. Justice is therefore better served by ordering a retrial with respect to coverage under the State Farm policy along with the retrial of the coverage question under the Zurich policy.

We add a comment with respect to the Zurich policy. We agree that the matter should be retried under the "reasonably believed" portion of the permission clause, and since that portion of the clause is more favorable for coverage than the remainder of the clause, we need not comment upon the remainder.

Mr. Justice JACOBS, Mr. Justice PROCTOR and Judge SULLIVAN join in this concurring opinion. The judgment in favor of State Farm is also reversed and the matter remanded for retrial as to it.

MOUNTAIN, J. (concurring in part and dissenting in part). I agree with the decision of the majority that the judgment of the Appellate Division be affirmed insofar as it concludes that there is no coverage under the State Farm policy resting upon permission, express or implied, given by Busby to Johns.

As to the so-called "added issue", now projected for the first time, I concur entirely with what is said by Judge Con-

ford in Part IV of his opinion. I, too, would be willing to entertain this issue even at this late date and despite the procedural inadequacies mentioned, if it had merit or substance, but as Judge Conford's opinion conclusively demonstrates, it has neither one nor the other. The fact finder might readily decide that Busby's conduct was such as to constitute an implied grant of permission to Kay to drive his, Busby's, car. But on this record the chain of permission definitely stops there. For Johns to qualify as a covered subpermittee there must be something, be it words or conduct, on the part of Kay, which is *consciously responsive* to the grant of permission he has received. He must be subjectively aware that he has permission and must then act, verbally or otherwise, in a manner responsive to that grant. There is nothing in the record that would in any way support even an inference that such was here the case. Nor do I think there should be a remand to take further testimony. The relevant factual sequence was thoroughly covered at the trial.

As to the nonowned automobile clause in the Zurich policy, I dissent from the majority holding and would affirm the decision that there is no coverage, substantially for the reasons given by the Appellate Division. 118 *N. J. Super.* 84, 93–95 (1972).

I do not quarrel with the conclusion of the majority that the language of the policy describing coverage as to nonowned vehicles is broader than that of the omnibus clause. I also agree that whether a driver reasonably believes he has permission to operate a particular automobile depends upon that driver's subjective state of mind, examined in the light of his social milieu and affected, doubtless, by the mores of the peer group with whom he associates. Accepting these postulates, I nevertheless conclude that a fact-finding that Johns reasonably believed he had permission to drive Busby's car could not be supported by anything in the record. Such inferences as may be drawn either way—and they are gossamer thin—tend rather to a conclusion that Johns knew full well he did not have permission.

I would in all respects affirm the decision of the Appellate Division.

*For reversal as to State Farm Mutual and Zurich American*—Chief Justice WEINTRAUB, Justices JACOBS and PROCTOR, and Judge SULLIVAN—4.

*For affirmance as to State Farm Mutual, reversal as to Zurich American*—Justice HALL, and Judge CONFORD—2.

*For affirmance*—Justice MOUNTAIN—1.