**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1478-19T3

YDALIBIS RAMIREZ,

     Plaintiff,

v.

BERNARDO GALVAN-
MARTINEZ, AUDIBERTO
MUNOZ-MUNOZ, NJ PROPERTY-
LIABILITY INSURANCE
GUARANTEE ASSOCIATION
AND PLYMOUTH ROCK
INSURANCE COMPANY,

     Defendants-Respondents.

_____

NADIUSKA J. KELLY AND
YASMELY SEGUNDO,

     Plaintiffs-Appellants,

v.

HIGH POINT PROPERTY
& CASUALTY COMPANY,[1]

     Defendant-Respondents.

_____

[1] Improperly pled as High Point Assurance.

Submitted October 7, 2020 – Decided  November 5, 2020

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket Nos. L-1544-18 and L-3116-18.

Law Offices of James Vasquez, PC, attorneys for appellants (James Vasquez and Paul F. O'Reilly, on the briefs).

Zimmerer, Murray, Conyngham & Kunzier, attorneys for respondents (Robert Zimmerer, of counsel and on the brief).

PER CURIAM

Plaintiffs Nadiuska J. Kelly and Yasmely Segundo appeal from two Law Division orders dated October 29, 2019.  One order granted summary judgment to defendants Plymouth Rock Insurance Company (Plymouth Rock) and High Point Property & Casualty Company, improperly pled as High Point Assurance (High Point).  The other order denied plaintiffs' summary judgment motion to secure insurance coverage.  We reverse summary judgment in favor of Plymouth Rock and High Point, vacate the denial of summary judgment to plaintiffs, and remand for further proceedings.

The facts are straightforward.  On December 21, 2016, plaintiffs, as well as the plaintiff in this consolidated action, Ydalibis Ramirez (Ramirez), were

injured in a car accident when a 2007 Pontiac G6 driven by defendant Bernardo Galvan-Martinez, and owned by defendant Audiberto Munoz-Munoz, struck Ramirez's vehicle at an intersection.

The night before the accident occurred, Galvan-Martinez and Munoz-Munoz, who were next-door neighbors and good friends, were drinking at Galvan-Martinez's residence. Galvan-Martinez asked Munoz-Munoz if he would give Galvan-Martinez a ride to work the next morning. Munoz-Munoz replied that he would, "if he had time." Sometime after midnight, Munoz-Munoz walked home. Because he left his house keys as well as the keys to his G6 at Galvan-Martinez's home, Munoz-Munoz woke up his wife to be let inside his home.

Munoz-Munoz left for work later that morning around 5:30. He drove another one of his cars, a Chevy Suburban. At around 5:45 a.m., Galvan-Martinez also left for work, taking the keys to Munoz-Munoz's G6 to drive himself to his place of employment. He did not ask Munoz-Munoz if he could drive the G6. Munoz-Munoz never allowed Galvan-Martinez to drive any of his cars before that day and he did not know if Galvan-Martinez maintained a driver's license. In fact, Galvan-Martinez was not a licensed driver.

A-1478-19T3

Munoz-Munoz first became aware that Galvan-Martinez drove the G6 to work when Galvan-Martinez called him at 7:30 a.m. and told him that he took his keys "without [his] permission" and got into an accident. Munoz-Munoz later testified in a deposition that he did not report his car stolen because it was "impossible" for him to do so. Galvan-Martinez was charged with driving without a license and careless driving, whereas Munoz-Munoz was issued a summons for permitting an unlicensed driver to drive his car.[2]

Plaintiffs initially filed a complaint and jury demand in November 2017 against Galvan-Martinez and Munoz-Munoz. Kelly and Segundo obtained default judgments against Galvan-Martinez in the amounts of $68,490 and $45,000, respectively. Munoz-Munoz filed an answer and crossclaimed against Galvan-Martinez. Subsequently, in March 2018, plaintiffs filed a stipulation of dismissal with prejudice as to Munoz-Munoz, since "he did not drive the car, and no agency relationship . . . existed between [him] and Galvan-Martinez."

Five months later, plaintiffs filed a complaint against High Point, seeking coverage from this insurance carrier because Munoz-Munoz was insured by High Point at the time of the accident. High Point filed a motion to dismiss for

---

[2] The record reflects this charge against Munoz-Munoz was dismissed.

A-1478-19T3

failure to state a claim, which was denied without prejudice in March 2019, to allow for discovery on the issue of permissive use of the automobile.

In August 2018, Ramirez filed an amended complaint against Galvan-Martinez and Munoz-Munoz, as well as defendants NJ Property-Liability Insurance Guarantee Association and Plymouth Rock. In May 2019, her case was consolidated with the action filed by plaintiffs.

In July 2019, Munoz-Munoz filed a motion for summary judgment, asserting there was no agency relationship between himself and Galvan-Martinez. The next month, plaintiffs cross-moved for summary judgment against High Point, to establish the carrier's obligation to provide coverage. Plymouth Rock and High Point also cross-moved for summary judgment, claiming they had no obligation to provide coverage, since Galvan-Martinez did not have permission to drive the G6 on the date of the accident.

On October 29, 2019, the trial court granted summary judgment to Munoz-Munoz without objection. The judge then denied plaintiffs' cross-motion for summary judgment and granted summary judgment to Plymouth Rock and High Point. The motion judge concluded that there was no competent evidence to suggest Galvan-Martinez had permissive use of the G6 on the date of the accident. The judge explained:

A-1478-19T3

I think the whole case with respect to Plymouth and High Point comes down to this one phrase. And that's the High Point Policy includes exceptions which state, and this is Subparagraph 17 . . . . "We do not provide liability coverage for nor have any duty to defend any insured . . . for any person using a vehicle without permission from [the] owner" . . . . Here's the clause. "Or without a reasonable belief that they were entitled to do so." And if somebody could convince me that Mr. Martinez had a reasonable belief that he was entitled to use the car, then there's an issue of fact.

You know . . . that's the whole case . . . . [T]here has to be . . . competent evidential materials that raise an issue of fact. And I don't see any competent evidential materials that raise an issue of fact as to whether or not Mr. Martinez had a reasonable belief that he was entitled to take that car . . . . And the fact that he wasn't a licensed driver.

State Farm v. Zurich[3] . . . [confirms] that the fact that he had no driver's license . . . is not dispositive . . . . But, again, . . . unless somebody produces some competent evidential materials that raise a genuine issue of material fact as to whether or not they had a reasonable belief they were entitled to do so, then I'm going to grant High Point and Plymouth's motion.

[T]here's a quantum leap from what I have seen here to the point where I would love to be convinced that [Galvan-Martinez] had a reasonable belief that he was entitled to do so. But for the fact that they were neighbors, the fact that the—the owner of the car goes to his house, gets drunk, walks back to his house, leaves the car there . . . leaves the key there . . . . And, you

---

[3] State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co., 62 N.J. 155, 169 (1973).

A-1478-19T3

know, that doesn't create . . . an inference that he had permission to use the car. And, for that reason, . . . I'm going to grant the motion.

In February 2020, Galvan-Martinez filed a Suggestion of Bankruptcy in response to the action filed by Ramirez, which stayed her action. Plaintiffs moved for leave to appeal in March 2020 and we granted that application.

Plaintiffs raise the following arguments for our consideration:

POINT I

MUNOZ-MUNOZ KNEW HE LEFT HIS KEYS WITH HIS GOOD FRIEND, WHOM HE KNEW NEEDED A RIDE TO WORK. MUNOZ-MUNOZ KNOWINGLY ACQUIESCED TO HIS FRIEND DRIVING TO WORK AND CANNOT CLAIM INNOCENCE.

POINT II

PUBLIC POLICY FAVORS A FINDING OF COVERAGE.

"We review [a] motion for summary judgment using the same standard applied by the trial court—whether, after reviewing 'the competent evidential materials submitted by the parties' in the light most favorable to [the non-moving party], 'there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law.'" Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). "An issue of material fact is 'genuine only if, considering

7

the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Id. at 24 (quoting Rule 4:46-2(c)).

Here, there is no dispute as to the material facts, and the coverage issues involve questions of law, on which this court exercises de novo review. Templo Fuente De Vida Corp. v. Nat. Union Fire Ins. Co. of Pittsburgh, P.A., 224 N.J. 189, 199 (2016). In exercising such de novo review, we owe no deference to the trial court's decision on an issue of law. Ibid. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We start with the understanding that automobile insurance policies are governed by statute. Both N.J.S.A. 39:6A-3 and N.J.S.A. 39:6B-1 require owners of vehicles used on public roads to carry mandatory minimum limits of liability coverage for the benefit of innocent third parties, arising out of the operation or use of the vehicle. The public policy underlying automobile insurance has been recognized by the Supreme Court since at least 1960. At that time, the Court held that "since automobile liability insurance contracts are written solely by the insurer and in face of the legislative purpose to benefit persons injured, such contracts are to be construed liberally in favor of the

injured." Matits v. Nationwide Ins. Co., 33 N.J. 488, 495 (1960) (citations omitted).

The Matits Court embraced the broadest possible interpretation of who was insured, by adopting the "initial permission rule," which holds that if the owner initially gives permission to another to use his insured vehicle, then short of the vehicle being subsequently stolen, the insurer is required to provide liability coverage for the protection of victims who suffer injury arising out of the use of the vehicle. Id. at 497.

The public policy considerations behind a broad construction of permissive use in automobile insurance policies is intended to provide protection for all highway users. Id. at 498. Accordingly, in Rutgers Cas. Ins. Co. v. Collins, our Supreme Court stated:

> As explained in [Zurich], the "reasonable belief" language in an insurance policy was originally designed to place an outer limit on those circumstances in which an automobile liability insurance policy provides coverage to an insured for [non-owned] vehicles. That language was intended to have a broader scope than "with permission" language.
>
> [158 N.J. 542, 547-48 (1998).]

Since the Matits decision, our Supreme Court has continued to find third-party coverage whenever there was "initial permission" to operate the vehicle.

A-1478-19T3

In Small v. Schuncke, Justice Proctor wrote for a unanimous Court that "[u]nder the initial permission rule only two questions must be answered to determine coverage. Was there permission to use the car initially? Did the subsequent use, while possession was retained, constitute 'theft or the like?'" 42 N.J. 407, 413 (1964).

The Zurich Court explained that insured policyholders may give their express or implied permission for someone to use their vehicle. 62 N.J. at 169. Implied permission exists when parties pursue a course of conduct signifying a mutual acquiescence or lack of objection that results in inferential permission. Id. at 167. The concept of implied permission is essentially summed up as "actual permission circumstantially proven." Id. at 167-68 (citing American Universal Ins. Co. v. Dykhouse, 219 F. Supp. 62, 66 (N.D. Iowa 1963), aff'd 326 F.2d 694 (8th Cir. 1964)).

Implied permissive use includes any sort of permission that can be inferred based on the circumstances of each case. See American Universal Ins. Co., 219 F. Supp. at 66. While implied permission may come about from "no specific ritual" and is circumstantial, there must be a relationship between the parties that garners an implied consent to the use of the other's vehicles. Zurich, 62 N.J. at 179. A close relationship between the parties is not always dispositive

A-1478-19T3

of implied permission, but it is a factor to be weighed in the totality of the attendant circumstances. See id. at 168.

Here, plaintiffs argue Galvan-Martinez had implied permission to use Munoz-Munoz's vehicle. They point to several undisputed facts supporting their contention, including the close relationship between Munoz-Munoz and Galvan-Martinez, who, as friends and next-door neighbors, interacted "constantly." Additionally, although Munoz-Munoz maintained he never allowed Galvan-Martinez to drive his car before the accident, he had given Galvan-Martinez rides on prior occasions. Further, Munoz-Munoz did not retrieve his keys after he left Galvan-Martinez's home, but instead elected to wake up his wife after midnight to be let inside his home. Additionally, despite his close proximity to Galvan-Martinez's home, and knowing his friend needed a ride to work that day, Munoz-Munoz did not retrieve his keys to the G6 on the morning of the accident. Instead, he left those keys in a place easily accessible to Galvan-Martinez. When deposed, Munoz-Munoz also confirmed he did not report his car stolen because it was "impossible." While we acknowledge Galvan-Martinez was an unlicensed driver at the time of the accident, this fact, as the motion judge correctly recognized, is not dispositive on the issue of permissive use, but rather, "a factor to be weighed by the fact-finder." Zurich, 62 N.J. at 168.

11

We are persuaded a jury could reasonably infer from these undisputed facts that Galvan-Martinez had implied permission to use Munoz-Munoz's car. See id. at 167. Stated differently, as we view the evidence presented in this case in the light most favorable to plaintiffs, we part company with the motion judge's determination that a rational jury could draw inferences from the undisputed facts and arrive at only one conclusion, so that Plymouth and High Point were entitled to judgment as a matter of law. See Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995). Accordingly, we are constrained to reverse the October 29, 2019 award of summary judgment to Plymouth Rock and High Point, vacate the October 29, 2019 order denying plaintiffs summary judgment, and remand for further proceedings.

Reversed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION