239 So.2d 772

**Sandra S. PETTIS et al.**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., a Corp.**

**1 Div. 622.**

Supreme Court of Alabama.

Oct. 1, 1970.

Pillans, Reams, Tappan, Wood & Roberts, Richard W. Vollmer, Jr., and Geary A. Gaston, Mobile, for appellee.

McCALL, Justice.

The complainant-appellee, State Farm Mutual Automobile Insurance Company, called State Farm, issued to the respondent-appellant, Robert C. Salley, an automobile liability policy, agreeing to pay on behalf of the insured damages within prescribed limits, which the insured might become legally obligated to pay, because of bodily injury or property damage to others caused by accident arising out of the ownership, maintenance or use of appellant Salley's automobile.

The insurance also applied to non-owned automobiles under the policy while being used by the named insured, Salley, or by his relatives, if residents of the same household, provided the use be with the permission of the owner, or person in lawful possession of the automobile.

James T. Strickland, Mobile, for Sandra S. Pettis and Joseph J. Boswell.

Barry Hess, Mobile, for Robert C. Salley and Robert C. Salley, Jr.

**346**

The appellant, Robert C. Salley, Jr., a son of the named insured, Robert C. Salley, while using a "non-owned" automobile under the policy, which belonged to Reverend James Kelly, was involved in a collision with another automobile occupied by the two appellants, Sandra S. Pettis and Joseph J. Boswell. The latter two appellants filed actions at law against Salley, Jr. alleging wrongful injury and damages.

When confronted with the issue of coverage of Salley, Jr. under its policy, State Farm countered with this suit in equity, denying coverage of him on the single ground that, at the time of the accident, Salley, Jr. was using the "non-owned" automobile without permission of either its owner, Reverend Kelly, or the person in lawful possession of the automobile, Michael Kelly. The bill seeks to have the issue of coverage determined.

The question presented by the parties for us to decide is whether or not Robert C. Salley, Jr., as an additional insured under his father's policy, had implied permission from Michael Kelly, to use the automobile when the accident occurred, so as to bring him within the protection of the policy. Stated another way the crucial question is whether there was a course of conduct on the part of Kelly from which arose Salley, Jr.'s implied permission to use the automobile?

Appellants contend that there was at least a scintilla afforded from the evidence to sustain the issue that the appellant Robert C. Salley, Jr. was driving the automobile, with the implied permission of Michael Kelly, and that the trial judge should have submitted the issue to the jury for its determination. This is the only issue substantially argued under assignments of error (3) and (4), each of which raises objection to the giving of the complainant's requested charge 44, reading as follows:

"The court charges you to return your verdict for the complainant."

Assignments of error made on the record, but not substantially argued in brief will be deemed waived and will not be considered by the court. Rule 9, Revised Rules of Practice in the Supreme Court, Appendix to Title 7, Code of Alabama, 1940, Recompiled 1958. In view of this rule we will consider only assignments of error (3) and (4); and further, questions not argued under either of these assignments will not be ruled on. Bryan v. W. T. Smith Lumber Co., 278 Ala. 538, 544, 179 So.2d 287; Lunney v. Southern Ry. Co., 272 Ala. 611, 133 So.2d 247; American National Bank and Trust Co. v. Powell, 235 Ala. 236, 178 So. 21.

If there was any evidence, or reasonable inferences to be drawn from the evidence, that Salley, Jr. had Michael Kelly's implied permission to use the automobile when the accident occurred, the issue should have been submitted to the jury. Alabama Farm Bureau Mutual Casualty Ins. Co. v. Robinson, 269 Ala. 346, 113 So.2d 140; Ridgeway v. Sullivan-Long & Hagerty, 39 Ala.App. 341, 98 So.2d 665.

The undisputed evidence shows that Salley, Jr. and young Kelly, who were then respectively sixteen and seventeen years old, were schoolmates and co-employees with part time employment at the same supermarket where they saw each other three or four days a week. Salley, Jr. had visited in Kelly's home one time and had attended the movies with him. They were good friends to the extent of these associations.

Over a period of several months while at work, Salley, Jr. had asked Kelly's permission on three occasions to drive the automobile to go for his lunch. One of these occasions was at lunch time earlier on the day of the accident. Kelly lent him the automobile for this limited purpose, and when Salley, Jr. used the automobile, he put gas in it. He said that this was the least he could do. On three other occasions, Salley rode in the automobile with

others driving who had Kelly's permission, and he likewise rode in it on the morning prior to the accident, but there is no evidence that Kelly knew of his presence in the automobile, and there is no evidence that Kelly and Salley, Jr. ever rode in the automobile together.

Kelly testified without contradiction that he never allowed anyone to use the automobile without his consent, and no one used it without his express permission, except Salley, Jr. on the single occasion of the accident. Kelly told Salley, Jr. not to use the automobile without his permission, and Salley, Jr. did not deny this, nor had he previously used the automobile without Kelly's consent.

Kelly left the automobile the evening of the accident on the supermarket parking lot while he went to a moving picture. He knew that, after he left the supermarket premises, Salley, Jr. would remain there from a half hour to forty-five minutes to clean up the store. The keys to the automobile had been lost for sometime, but the engine could be started by turning the ignition switch without a key. After completing his work that evening, Salley, Jr. started the automobile in this manner and drove away from the parking lot in pursuit of some friends in another automobile. He was on this personal mission, when the accident occurred.

■ While Salley, Jr. had previously ridden in the automobile on that day and used it with permission, we fail to see that these circumstances or Kelly's conduct otherwise, on that day, support a reasonable inference of permission for Salley, Jr. to drive off in the automobile for his own purpose, after returning it from his earlier permissive use.

■ We have held that in order to support an inference that one had implied permission to use the automobile of another for his own pleasure and purposes, there must be a course of conduct engaged in by the parties over a period of time prior to the use in question, or, if in the first instance, there must be particular circumstances, to justify an inference of implied permission. Alabama Farm Bureau Mutual Casualty Ins. Co. v. Robinson, 269 Ala. 346, 113 So.2d 140.

■ The evidence must tend to show a course of conduct or practice on the part of the person whose consent must be had, with knowledge of the existing facts and circumstances, that supports a reasonable inference of permissive use of the automobile.

In Tomasetti v. Maryland Casualty Co., 117 Conn. 505, 169 A. 54, an authority previously cited by this court with approval, it is said:

"* * * It [permission] may arise and be implied from a course of conduct, pursued, with knowledge of the facts, for such time and in such manner as to signify, and be compatible only with, an understanding consent amounting to a grant of the privilege involved. * * *"

■ Many pertinent factors may properly be considered in a determination of the question of whether implied permission existed on the occasion of the use, but whatever their nature, extent and pertinency, their result must be consistent with, and generate and support a reasonable inference that the driver had permission to use the automobile.

In applying this test we fail to find from the evidence where Kelly's course of conduct in the premises was such as to signify, and be compatible only with, an understanding consent amounting to permission to use the automobile for Salley, Jr.'s personal purpose on the occasion in question. Salley, Jr.'s use was contrary to and in complete disobedience of Kelly's express instructions not to use the automobile without his permission. Kelly's admo-

348

nition is not consistent with conduct or behavior of a permissive attitude. After the accident, Salley, Jr. and his father went to the Kelly residence to tell Reverend Kelly that his son did not know that young Salley had used the automobile. Neither does this action create a favorable inference of an understanding consent to use the automobile. We think that Kelly's favors toward his friend Salley, Jr. were no more than sporadic acts of indulgence that do not amount to a grant of a permit, a right, or a privilege to use the automobile without his permission.

Nor does the statement testified to by Salley, Jr., as having been made by Kelly on Monday following the accident on Saturday, change the situation. Salley, Jr. testified as follows: "I asked him (Kelly) if he was mad at me." He said "no, that it would have been all right if I had not wrecked the car." This ex post facto statement tends to show a ratification of the use of the non-owned automobile, but the use, if unauthorized, cannot be made effective by this statement so as to bring Salley, Jr. within the protection of the policy coverage.

In 3 Am.Jur.2d, Agency, § 185, p. 570, it is stated:

"The retroactive efficacy of ratification does not fully operate where the rights of third persons have intervened between the act and the ratification. That is, although ratification generally operates retroactively as though the proper authority had existed in the first place, ratification is not effective to lessen the rights or other interests of persons not parties to the transaction which were acquired before affirmance. * * * In the words of the Restatement, ratification is not effective in diminution of the rights or other interests of persons not parties to the transaction which were acquired in the subject matter before affirmance."

The subsequent expression of ratification of the use by Kelly cannot serve to impose retroactive liability on the insurer under the omnibus clause of the policy.

We conclude and hold that the facts are insufficient under the scintilla rule to imply permission to Robert C. Salley, Jr. to use the automobile and that he is not within the protection of the policy.

For the reasons stated the judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, COLEMAN, and BLOODWORTH, JJ., concur.