OPINION OF THE COURT
Arthur D. Spatt, J.
In this nonjury trial, the issues were delineated by order of this court dated February 5, 1982 (Becker, J.), as follows:
(1) “Whether the vehicle owned by Arc Leasing Corp. and insured by American Transit Insurance Co. was being driven by a thief at the time of the accident with respondents?”
*315 (2) “Whether American Transit has properly disclaimed coverage?”
THE TRIAL
Respondent Gladys M. Norris testified that she was involved in an automobile accident on April 26, 1981 on Third Avenue and 31st Street in the Borough of Manhattan. In this accident, both she and her daughter Lisa were injured. The impact was very severe, and her car was thrown across to the other side of the street. Both she and her daughter (claimants) sustained injuries.
The other vehicle involved in the accident was a brownish Cadillac driven by a young man in his 20’s with blond hair. This person asked Mrs. Norris if she was all right and said something about wanting to make a settlement right then and there and for her to give him some money. His license was not in order; and as soon as a pedestrian said that he would call the police, this driver walked away and disappeared. Mrs. Norris did not obtain his name or any identification number, and she never saw or heard from him again.
It was ultimately discovered that the Cadillac automobile was owned by respondent Arc Leasing Corp. (Arc Leasing) of 4250 Hempstead Turnpike, Bethpage, New York.
Mrs. Norris retained the law firm of Gandin, Schotsky & Rappaport, P. C., within a few weeks after the accident. It was stipulated by the parties that (1) Arc Leasing owned the Cadillac involved in this accident, and (2) that the car was insured by the respondent American Transit Insurance Company (American Transit) at the time of this occurrence.
Charles J. Zoubek testified on behalf of the respondent American Transit. He is and was, for a period of five years, the claims manager for American Transit. He reviewed the claims file and testified that American Transit received an accident report from their assured Arc Leasing on May 11, 1981. This report (petitioner’s Exhibit No. 3) indicated that the subject Cadillac car was stolen from their lessee’s home on April 25, 1981.
*316 Mr. Zoubek further testified that the claimants’ attorneys had sent Arc Leasing a letter on May 12,1981, which American Transit had received on May 18, 1981. The only communication between American Transit and the claimants’ attorneys was that American Transit mailed a copy of the police report to said counsel.
Mr. Zoubek conceded that no written disclaimer or letter was ever sent to the claimants or their attorneys or to Arc Leasing, their insured. Mr. Zoubek explained that the reason no written notice of disclaimer was sent out was because there was “no reason to believe that the Norris’s would be claimants” and that there was no claim ever made by the Norris’ or anyone on their behalf.
Dennis J. Sturtz, a principal of Arc Leasing, testified that he received notice that the Cadillac was stolen on April 24 or April 25 from Terry Worth, a principal in Checkmate Travel Co., the firm that leased the automobile. He testified that Arc Leasing as owner gave no one permission to use the vehicle except Checkmate Travel.
Terry S. Worth, principal owner of Checkmate Travel, the lessee of the Cadillac automobile, testified that the automobile was in the possession of her partner, Esther Levine, who garaged the vehicle at 82-10 214th Street, Queens Village. On April 25, 1981, Mrs. Levine was on vacation and, in response to a call by a neighbor, Mrs. Worth went to Mrs. Levine’s residence in Queens Village and saw that the car was missing. She went into the house and saw that the house had been obviously burglarized, and that it was in a disheveled condition with the windows ajar. She called the police and later went to the station house in Queens to report the theft. Mrs. Worth testified that she gave permission to no one to use the Cadillac car on April 26, 1981.
Police Officer Fritz Holm testified that he investigated the alleged burglary and went to premises 82-10 214th Street and found the place was in disorder and ransacked.
Charles Rappaport, Esq., who is an attorney in the firm of Gandin, Schotsky & Rappaport, P. C., testified that his firm was retained on May 11, 1981. He received a copy of the New York City Police Department accident report from *317 American Transit, which report indicated that the Cadillac car was a stolen one. His firm made no claim directly against American Transit and did not commence an action against Arc Leasing. They wrote to Arc Leasing on May 12, 1981, who advised them by letter that the car was stolen.
The claimants’ law firm contacted American Transit by telephone and advised the representative of that insurance company that they will make an uninsured motorists’ claim if they are satisfied that the car was stolen. After American Transit sent them a copy of the police blotter, the law firm made a claim for arbitration against the petitioner Insurance Company of North America under the uninsured motorist provision of claimants’ policy. Petitioner thereafter moved to permanently stay arbitration and for a determination that American Transit had a valid insurance policy in effect covering the Arc Leasing Cadillac car at the time of the accident.
THE REMAINING ISSUES
In an oral decision rendered from the Bench, the court determined that at the time of this accident, the Cadillac car owned by Arc Leasing and insured by American Transit was being operated by a thief; that the car was stolen from Levine’s Queens Village premises; that no permission or consent was given by Checkmate Travel or Arc Leasing to the operator; and that there was no permission to operate the vehicle within the provisions of section 388 of the Vehicle and Traffic Law.
With regard to the second issue as to whether American Transit “has properly disclaimed coverage”, the court reserved decision.
Another issue became apparent during the course of the trial, namely, the effect of an invalid disclaimer by American Transit with regard to the defense available to American Transit that the Cadillac was driven by a thief. If the court finds that there was no valid disclaimer, then American Transit’s insurance policy was in effect, and the claimants cannot make a claim against the petitioner under the uninsured motorists’ provision. However, in that event, the claimants will be faced with the absolute defense by Arc Leasing and American Transit that, at the time of the *318 accident, the car was being operated by a thief without permission or consent.
Therefore, petitioner’s attorney has requested that if there is a finding that there was no proper disclaimer by American Transit, that American Transit be estopped from pleading the defense of “stolen car” or “no permissive use” in the negligence lawsuit against Arc Leasing.
With regard to the validity of American Transit’s “disclaimer”, there are three issues to be determined by the court, as follows:
(1) Was American Transit required to give “written notice” of its disclaimer or denial of coverage?
(2) If so, was such written notice given?
(3) If written notice was required but not given, what is the effect thereof upon the rights of the claimants, the insured and the carrier vis-a-vis the “stolen car” defense?
WAS AMERICAN TRANSIT REQUIRED TO GIVE WRITTEN
NOTICE OF DISCLAIMER OR DENIAL OF COVERAGE?
Subdivision 8 of section 167 of the Insurance Law provides as follows: “If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.”
The interpretation by the courts of the words in the statute “disclaim coverage” and “deny coverage” have given rise to a plethora of litigation. What type of disclaimer or denial of coverage did the Legislature intend when it mandated the giving of written notice? The Court of Appeals has recently interpreted the statute with regard to the duty to give written notice. In Zappone v Home Ins. Co. (55 NY2d 131), Judge Meyer stated that a carrier may deny liability in three general categories. First, where the insured has breached the terms of the policy by failing to co-operate or give notice, written notice of disclaimer is required. Second, where although the vehicle may be cov *319 ered by the policy, there is a policy exclusion such as the person injured being an employee of the insured within the course of his employment (workers’ compensation defense) or a vehicle insured as a pleasure vehicle was being operated as a public conveyance, written notice of denial of coverage is required.
However, where there is a denial of coverage because there is no contract of insurance covering the person or the vehicle, or the policy had been previously canceled by the insurer or terminated by the acts of the insured, no written notice is required. In this latter case, there was never any insurance in effect, and a failure to give written notice may not create such coverage. The rule is as follows (Zappone v Home Ins. Co., supra, pp 135-136): “We conclude, however, that the Legislature did not intend by its use of the words ‘deny coverage’ to bring within the policy a liability incurred neither by the person insured nor in the vehicle insured, for to do so would be to impose liability upon the carrier for which no premium had ever been received by it and to give no significance whatsoever to the fact that automobile insurance is a contract with a named person as to a specified vehicle.”
The Zappone ruling has been illustrated by the Appellate Division, Second Department, in the case of United Servs. Auto. Assn. v Meier (89 AD2d 998), in which three grounds for denial of coverage were asserted by the carrier. Two of the grounds involved “a denial of coverage because plaintiff made no contract of insurance with the person or for the vehicle involved in the accident”, and, thus, pursuant to Zappone, the carrier was not required to give written notice. However, as to the third ground, namely, that the vehicle was being operated in a noncovered activity, it was held that written notice was required, as follows (p 999): “By attempting to deny coverage on this ground, plaintiff does not claim that there was never any insurance in effect, but, assuming that a policy of insurance existed that would otherwise cover the particular accident, claims that it does not afford coverage because of an exclusion in the policy. (See Zappone v Home Ins. Co., supra, p 138.)”
*320 Further, the court in the United Servs. Auto. Assn. case held that the nonpermitted use of the vehicle was “in the nature of a policy exclusion”.
In this case, there was a contract of insurance covering the Cadillac car, and the “stolen car” defense or denial is based upon a provision in the policy “in the nature of a policy exclusion” and, also, upon a statutory exclusion. The policy provides that it will cover “all persons using such automobile with the permission of the Named Insured”. By the terms of subdivision 1 of section 338 of the Vehicle and Traffic Law, Arc Leasing, the owner, would be liable only if the vehicle was being operated “with the permission, express or implied, of such owner”. This court has already found that the car was being operated by a thief at the time of the accident, and that there was no permissive use. Therefore, both by the terms of the policy and the provisions of the statute, Arc Leasing and the carrier have a defense to the claimants’ personal injury claims. This policy and statutory exclusion is somewhat similar to the workers’ compensation exclusion noted in Zappone as a situation wherein written notice of disclaimer is required.
The defense of lack of permissive use with regard to the requirement of written notice of denial of coverage was dealt with in Richardson v Leatherbee Ins. Co. (47 AD2d 891) as follows: “So far as appears from the record, respondent at no time, up to the present, disclaimed liability in accordance with subdivision 8 of section 167 of the Insurance Law. Under that section it was obligated to ‘give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.’ While there was some delay on the part of the injured party in giving notice, respondent had ample opportunity to disclaim or deny coverage but did neither. Since respondent is still not disclaiming, it should not now be able to avoid liability (Allstate Ins. Co. v Gross, 27 NY2d 263). The question of permissible use should be deemed waived by the failure to disclaim.” (Emphasis supplied.)
Therefore, in this “permissive use” case in which the vehicle was being operated in a situation “in the nature of *321 a policy exclusion”, written notice pursuant to subdivision 8 of section 167 of the Insurance Law was required.*
WAS WRITTEN NOTICE GIVEN?
American Transit contends that (1) the forwarding of the police report to claimants’ counsel was sufficient “written notice”, and (2) since claimants’ counsel “had actual notice, both oral and written, that the 1979 Cadillac * * * was stolen” by virtue of having received the police report and a letter from Arc Leasing to that effect; and since claimants’ counsel has, in fact, sought to recover from petitioner under their uninsured motorist coverage, there has been no prejudice to claimants.
The term “written notice” in the statute must be given its literal and ordinary meaning. In interpreting insurance statutes and policies, strict compliance has been required with regard to such “written notice” requirements. (See, e.g., Allstate Ins. Co. v Furman, 84 AD2d 29, 31), in which it was held that telephone notice by an insured “was insufficient because it was not written”.
Even a clear compliance with the “written notice” provision was the subject of litigation in Miranda v Aetna Cas. & Sur. Co. (51 AD2d 1035), wherein a carbon copy of the letter of disclaimer to the injured plaintiff’s attorney was held to satisfy the statutory requirement.
Further, it has been held that neither a letter containing a reservation of right to assert policy defenses (Allstate Ins. Co. v Gross, 27 NY2d 263), nor the commencement of a declaratory judgment action (Michigan Millers Mut. Ins. Co. v Baranowski, 105 Misc 2d 669) is a sufficient written notice of disclaimer or denial of coverage.
American Transit concedes that there was no “written notice” of “disclaimer of liability” or “denial of coverage” sent either to their insured Arc Leasing or to the claimants or their counsel, even though they received a copy of the claimants’ claim letter on May 11, 1981, within 17 days of the accident. Not only was there no written notice of disclaimer, but there was no proof offered of an oral disclaimer.
*322 Accordingly, the court finds that no written notice of disclaimer or denial of coverage was given either to the insured or to the claimants. Such notice being required, American Transit failed to comply with the provisions of subdivision 8 of section 167 of the Insurance Law and has not properly disclaimed coverage.
AS TO THE EFFECT OF THE FAILURE TO PROPERLY DISCLAIM UPON THE RIGHTS OF THE CLAIMANTS, THE INSURED AND THE CARRIER
The contention by American Transit that claimants have not been prejudiced and, therefore, there should be no waiver of the defense of lack of “permissive use” is without merit. It is well settled that the carrier may waive such defense by reason of its failure to properly or timely disclaim even in the absence of prejudice. (See Allstate Ins. Co. v Gross, supra.) In Western World Ins. Co. v Jean & Benny’s Rest. (69 AD2d 260, 263), this rule was stated as follows: “Under subdivision 8 of section 167 of the Insurance Law, as amended effective October, 1975, an insurance company will be estopped from disclaiming liability or denying coverage for bodily injury for any type of accident occurring within the State where it fails to make a prompt disclaimer. There is no requirement that the insurance company’s delay in disclaiming be shown to have prejudiced either the insured or the injured party (see Allstate Ins. Co. v Gross, 27 NY2d 263).”
Whether the theory by which the carrier is prevented from asserting such defense is called a “waiver” by the carrier of the defense, or a “preclusion” or “foreclosure” as a result of the failure to comply with the statutory notice, the defense of “lack of permissive use” by reason of the car being operated by a thief is no longer available to the carrier.
This principle was stated by Judge Breitel in Allstate Ins. Co. v Gross (supra, pp 269-270) as follows:
“Although some cases arising under the statute have utilized the old prestatutory waiver or estoppel theories, such theories are" superfluous when the statute is read in context. The Motor Vehicle Accident Indemnification Law has, in effect, established an absolute rule that unduly *323 delayed disclaimer of liability or denial of coverage violates the rights of the insured, the injured party, and MVAIC.
“Whether the absolute rule was enacted because of a presumption of prejudice from any undue delay or for some other reason is of no moment. The statute lays down an unconditional rule.”
In Blackmer v Travelers Ind. Co. of Rhode Is. (110 Misc 2d 704, 707) this “preclusion” by the carrier was enunciated as follows: “Although plaintiff claims that he has been prejudiced by the defendant’s delay in disclaiming, prejudice is not required when subdivision 8 of section 167 has not been complied with (Allstate Ins. Co. v Gross, 27 NY2d 263). This is not estoppel in the traditional sense but, rather, preclusion brought about by failure to comply with the statute.”
Finally, in the recent United Servs. Auto. Assn. (supra, p 999) case, the effect of the failure to give written notice is stated as follows: “Therefore, since we agree with Special Term that plaintiff did not timely comply with the notice requirements of subdivision 8, plaintiff is foreclosed from denying liability for coverage predicated on the exclusion in each of the subject policies regarding activity related to the automobile business, and is barred from asserting such a denial in this action.”
In sum, the cases have consistently held that a carrier who fails to give timely written notice of disclaimer is precluded from asserting by way of defense the ground upon which a timely disclaimer could have been based, or has waived such defense. (See State of New York v Fidelity & Cas. Co., 70 AD2d 687; Michigan Millers Mut. Ins. Co. v Baronowski, supra.)
Accordingly, the court directs the following relief:
(1) Petitioner’s application for a permanent stay of arbitration is granted.
(2) American Transit has failed to validly disclaim or deny coverage, and it is declared that American Transit must afford coverage to Arc Leasing with regard to the Norris claims in the automobile accident of April 26,1981.
*324 (3) By reason of its failure to give written notice of disclaimer under subdivision 8 of section 167 of the Insurance Law, American Transit is precluded from asserting the defense of “permissive use” based on the fact that the subject insured Cadillac vehicle was stolen, to the extent of the policy limits.
(4) This preclusion is only to the extent of American Transit’s policy limits. As to any recovery in excess of the American Transit policy limits the insured, Arc Leasing, is not precluded from asserting the defense of no permissive use.
Settle judgment on notice.

 The court notes that counsel for American Transit came to the same conclusion, namely, that written notice was required.