# LAUGHNER v PROTECTIVE CASUALTY INSURANCE COMPANY

## Case No. 87-1469

Thirteenth Judicial Circuit, Hillsborough County

January 5, 1989

**APPEARANCES OF COUNSEL**

**Tom Long,** for plaintiff.

**Charles Crist,** for defendant.

## OPINION OF THE COURT

GUY W. SPICOLA, Circuit Judge.

### FINAL JUDGMENT IN FAVOR OF THE PLAINTIFF

This case came before the court for final hearing on December 12, 1988. This action concerns, among other things, a question of coverage pursuant to the terms of an insurance policy. The plaintiff, Dale Warren Laughner ("Laughner"), who was insured by the Defendant, was employed by the Hillsborough County Planning Commission (the "Planning Commission").

*Facts of the Case*

On July 10, 1981, Laughner checked out a vehicle owned by Hillsborough County and took it home to use for site inspections over the weekend. That night, at about midnight, Laughner engaged in a fight with his wife and left the house. He alleges that his personal car, which was insured by Defendant Protective Casualty Insurance Company ("Protective"), would not start. Laughner then returned to his house, retrieved the keys to the county car, and drove it away. At about 2 a.m., on July 11, 1981, he was involved in an automobile accident with a third party. Thereupon, the third party sued Laughner. Both Hillsborough County, which is self-insured, and Protective denied coverage. Laughner settled with the third party personally. As a result, Laughner brings this action for damages and seeks $16,597.56, plus attorney's fees and costs in this action, if he prevails.

Consequently, the issue in this case is whether Laughner's automobile insurance policy provides coverage pursuant to the foregoing facts. Laughner is covered if the county car was a substitute car for his personal car, or if he used the county car with the permission of the owner. The policy states:

1. "We insured a substitute car when any car described on the declarations page can not be used because it's being *serviced or repaired . . .*" (emphasis supplied).

2. "We cover other cars you use with the permission of the owner . . ."

3. "We do not insure other cars furnished for regular use of you . . ."

In response to Laughner's claim of coverage, Protective contends:

1. A car that is abandoned because it will not start is not being "serviced or repaired."

2. The Hillsborough County vehicle was not used with the permission of the owner, that at the time of the accident the county vehicle was taken for an unauthorized use. (See Protective's Exhibit 2, page 5, "Fleet vehicles will be used for official business only. . . . County employees may not make side trips for whatever reason to conduct personal business.")

Laughner essentially responds:

1. The phrase "serviced or repaired" is broad enough to cover an inoperable vehicle.

2. Custom and habit of the Planning Commission employees (which is separate from Hillsborough County Commission employees) was to

**37**

use the vehicles they had checked out for personal errands. Further, there is no proof Protective's Exhibit 2 was circulated among the Planning Commission employees.

Protective counters that if Laughner's second contention above is true, then Protective is still not liable, because it does not insure other cars "furnished for regular use" of the insured. Trial testimony was that Laughner brought the car home about once a month.

## Analysis of the Law

There is little Florida case law on these precise issues, but other jurisdictions and treatises have addressed the issues extensively. The purpose of a substitute provision is not to defeat liability, but to limit the risk to one operating vehicle at a time for one premium. *State Farm Mutual Ins. Co. v Leitz,* 122 Ga. App. 596, 178 S.E.2d 218, 220 (1970). If a policy is not ambiguous in its wording, then it is not to be construed as though it were. *Standard Mutual Ins. Co. v Sentry Ins. Co. of Ill.,* 146 Ill. App.3d 905, 497 N.E.2d 476, 479 (1986). However, if there are two equally fair interpretations that may be given to a policy, then the interpretation providing the great indemnity will prevail. *DaCosta v General Guaranty Ins. Co.,* 226 So.2d 104 (Fla. 1969(, conformed to 226 So.2d 468. See also, *Nu-Air Mfg. v Frank B. Hall & Co. of N.Y.,* 822 F.2d 987, 992 (11th Cir. 1987), reh'ing den., 829 F.2d 1132.

### A. Serviced or Repaired

Most automobile policies cover substitute cars when the insured car is withdrawn from normal use because of "breakdown, repair, servicing, loss or destruction." 12 Couch on Insurance 2d 45:226. Laughner's policy is unusual in that it does not contain the word "breakdown" in the policy's explanation of its coverage for substitute cars. See Laughner's Exhibit 1, page 2.

"Breakdown" generally has been given a broad definition as a condition rendering the insured vehicle inoperable or a condition which would make the vehicle's use dangerous, as opposed to a breakdown of a nonessential component. *State Farm Mutual Ins. Co. v Leitz,* 178 S.E.2d at 220. Flat tires, failed transmissions or stalled engines have been found to constitute breakdowns under the substitute vehicle provisions of an automobile insurance policy, since these components are necessary to the car's operation. See cases collected in Annotation, Car Insurance — Substitution, 42 A.L.R. 4th 1145 (1985).

Here, Laughner's policy afforded coverage when Laughner's own car could not be used "because it's being serviced or repaired." There is a

question whether Laughner's personal car could not be used, since it was used by his wife that same night. The greater question is whether (say) a faulty battery comes within the definition of "being serviced or repaired." In construing an insurance contract that did contain the word "breakdown", one court found that servicing a car was brought enough to include painting it. *Sanz v Reserve Ins. Co. of Chicago,* 172 So.2d 912, 913 (Fla. 3d DCA 1965). The court looked to the "man-on-the-street" meaning of the word "service" to find a definition, and concluded the word could not be narrowly defined to exclude the times a vehicle was unusable because it was being painted.

If Laughner's personal car had started that night, then he would have driven that vehicle. Laughner used the county car as a substitute because his own car appeared to be inoperable. The reasonable person's understanding of service or repair includes the times a car is unusable because of a faulty battery, because the battery would have to be repaired or replaced before the car could be returned to normal usage.

B. Implied Permission

Substitute automobile coverage also is available to Laughner under his policy if he used the car "with the permission of the owner." Laughner does not contend he had the express permission of the Commission to use the vehicle for personal trips, but rather that permission was implied by the custom and habit of the department he worked in. Implied consent involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances that signify assent. *Allstate Ins. Co. v State Farm Mutual Ins. Co.,* 260 S.C. 350, 195 S.E.2d 711 (1973). Similarly, courts find implied consent where no express limitation or negation of consent can be found in the facts of the suit. *Ray v Earl,* 277 So.2d 685 (Fla. 1973). See also *Pettis v State Farm Mutual Ins. Co.,* 286 Ala. 344, 239 So.2d 772, 775 (1970), where the Supreme Court of Alabama looked to the length of time the course of conduct signifying consent had existed. At the Planning Commission, the employees did not need express permission to use the county cars; they merely signed the cars out before leaving.

The testimony indicated that nonbusiness use of county cars by Planning Commission employees was common in the two years of Laughner's employment before the accident. Apparently, no Commission employee was ever disciplined or fired for unauthorized use of a county car. Laughner himself was not fired after damaging a county car while on personal business. The evidence at trial revealed a course of conduct by several county employees that included using the cars

for side trips to restaurants, stores and athletic events. Laughner testified he had observed a pattern of personal use of county vehicles by other employees, and that he reasonably believed such conduct was not prohibited. Protective's testimony did not show that such personal use was permitted, but neither did it show a pattern of forbidding such use. Where there is a conflict in the testimony about whether a driver has implied permission to use a car, permission has been upheld by the court. *National Service Fire Ins. Co. v Williams,* 61 Tenn. App. 362, 454 S.W.2d 362 (1969).

C. Regular Use

Laughner's policy did not insure cars "furnished for the regular use of you." One court has held that a car furnished for business purpose is not one furnished for regular use of the employee, even if there is sporadic personal use of the vehicle. *U.S. Sugar Corp. v Nationwide Mutual Ins. Co.,* 475 So.2d 1350 (Fla. 2d DCA 1985). This case reiterated the general principle that policy provisions are to be construed liberally in favor of the insured. *Id.* at 1352.

### Conclusion

Laughner purchased an insurance policy to provide coverage in the event of an accident. When an accident occurred, Laughner was driving a substitute car because his own car would not start. Laughner's employer had not objected in the past to its employees' use of the cars for personal side trips. The facts support Laughner's contention that he was within the coverage of his insurance policy at the time of the accident.

WHEREFORE, the court finds:

1. Laughner's use of the substitute vehicle was because of a breakdown.

2. The policy covers breakdowns.

3. Laughner's use of the vehicle was with implied permission.

4. The policy covers use with implied permission.

5. Laughner's compensable damages, pursuant to the terms of the policy are $16,597.56, exclusive of attorney's fees and costs.

6. Counsel shall schedule a hearing to argue the claims for and amount of attorney's fees and costs, if same cannot be agreed upon.

DONE AND ORDERED in Chambers in Tampa, Hillsborough County, Florida, this 5th day of January, 1989.