Alfa Mutual Insurance Company (hereinafter referred to as "Alfa") appeals the trial court's declaratory judgment in favor of Gladys L. Small. We affirm. *Page 744 
On March 9, 2001, Alfa sent a letter to the trial judge stating its arguments concerning this declaratory-judgment action. Small sent a similar letter on March 12, 2001. On that same day, the parties submitted the following stipulation of undisputed facts to the trial court:
 "1. On August 29, 1998, Saundra Young was insured under a policy of insurance issued by Alfa Mutual Insurance Company, covering her 1979 Chevrolet Corvette automobile. That policy extended liability insurance coverage to any other person while using that specific automobile `with the express permission' of Saundra Young.
 "2. On August 29, 1998, David Barclift was living with Saundra Young as her boyfriend. Saundra Young testifies that she never considered them to be married. David Barclift took the automobile without permission that day and drove the Corvette automobile to Opelika. Saundra Young was not at home at that time.
 "3. David Barclift had driven the Chevrolet Corvette on a couple of occasions, each time with the express permission of Saundra Young and with her as a passenger. However, Saundra Young had told David Barclift that he could not drive her Chevrolet Corvette without specific permission, and Saundra Young did not allow David Barclift to drive either of her automobiles without her express permission. The automobile was kept at the house which Saundra Young and David Barclift were sharing at the time of the accident, and the keys were kept at the house as well. Saundra Young and David Barclift each had other operable automobiles which they respectively drove.
 "4. While in Opelika on August 29, 1998, David Barclift called Saundra Young and told her that he had her automobile. Saundra Young said to David Barclift at that time, `You better get your ass in that car and drive my car home. You knew not to drive it to begin with.' David Barclift replied that he was bringing the car home.
 "5. On the way home from Opelika to return the vehicle to Saundra Young, David Barclift was involved in an automobile accident in the Chevrolet Corvette automobile, with the vehicle colliding with a vehicle occupied by Plaintiff Gladys Small.
 "6. David Barclift had no liability insurance otherwise. The policy of insurance issued by Alfa Mutual Insurance Company, referenced above, provided possible liability benefits of $25,000.00 per person. If David Barclift qualified as a permissive user under the insurance policy at the time of the accident, the liability insurance applies to this accident. If David Barclift did not qualify as a permissive user at the time of the accident, David Barclift was completely uninsured and the only claim in this case for insurance benefits would be against the Hartford Insurance Company, who provided uninsured/underinsured benefits to Plaintiff at the time of this accident. Hartford is a Defendant in this case pursuant to the uninsured motorist claim.
 "7. Saundra Young did not file any criminal charges against David Barclift for theft of or damage to the Corvette automobile. Alfa Mutual Insurance Company made no claims against David Barclift for any subrogation interest for claims paid to Saundra Young under the collision provisions of the policy issued to Saundra Young.
 "8. Alfa Mutual Insurance Company had notice and knowledge of claims asserted by Gladys Small within 30 days of the accident made the basis of this lawsuit, as Saundra Young reported the accident to Alfa Mutual Insurance Company. *Page 745 
 However, Saundra Young told Alfa Mutual Insurance Company during that time frame consistently that David Barclift did not have permission to drive her automobile at the time of the accident, and that he was not authorized to drive her cars without her permission whenever he wanted to do so."
On May 29, 2001, the trial court entered an order that stated, in pertinent part:
 "Based on the pleadings and facts, as well as the authority submitted by the parties, the Court finds that Defendant David Barclift is an insured driver under the policy of insurance issued by Alfa covering Young's vehicle involved in this accident. Express permission to operate the vehicle occurred when Young learned that Barclift had taken the vehicle. Although the Court does not contend Barclift had express permission when he initially took the vehicle, the Court considers Young and Barclift's cohabitation and relationship important in reaching this conclusion. Young did not seek any criminal remedy due to Barclift's taking of the vehicle. The facts indicate Young more than ratified or simply acquiesced to the use of the vehicle. Indeed, she specifically instructed Barclift to drive the vehicle home. A different result would perhaps be reached if Barclift had been instructed to immediately park the car and not to drive it. From the totality of the facts, and circumstances, express permission was given."
On July 2, 2001, the trial court made its order final pursuant to Rule 54(b), Ala.R.Civ.P.
Our review of a declaratory judgment is generally governed by the ore tenus standard of review. However, in cases such as this, where there are no disputed facts and where the judgment is based entirely upon documentary evidence, no such presumption of correctness applies; our review is de novo. As this Court has stated:
 "A presumption of correctness attaches to a trial court's judgment based on findings of fact after the court has heard oral testimony without a jury; this is the `ore tenus' rule. However, that rule has no application in this case, because the facts are not in dispute. Therefore, the trial court's judgment is not entitled to any presumption of correctness."
Cincinnati Ins. Co. v. Nelson, 668 So.2d 539, 540 (Ala. 1995) (citingParker v. Barnes, 519 So.2d 945 (Ala. 1988)).
Alfa argues that the trial court erred in determining that Barclift had Young's "express permission" to drive her vehicle. The insurance policy at issue stated, in regard to covered persons, in pertinent part:
"Covered Person — means:
"1. You and your.
"2. Family members.
 "3. Any other person while using the covered car with the express permission of you or a family member."
(Bold type in original.) Alfa correctly asserts that the clause at issue, also referred to as an "omnibus clause," requires a finding that Young gave Barclift her express permission to use her vehicle and that a finding of implied permission would not support Alfa's liability on any claim asserted by Small. See Pharr v. Beverly, 530 So.2d 808 (Ala. 1988). Alfa also offers caselaw from other jurisdictions holding that for coverage to be found under an omnibus clause, permission must be a voluntary act of the insured, and that permission is not shown when another driver has taken the insured's vehicle without the insured's knowledge. See Dairyland Ins. Co. v. Makover, 654 F.2d 1120 (5th Cir. 1981) (permittee's husband did not have the implied permission of the permittee or the insured *Page 746 
and was not, at the time of the accident, operating the vehicle within the scope of permission given to the permittee); Insurance Co. of NorthAmerica v. Norris, 116 Misc.2d 314, 455 N.Y.S.2d 190 (1982) (thief who was driving vehicle, while not a permissive user, was covered under the policy because of the insurer's failure to validly disclaim liability and deny coverage, and the insurer therefore waived the defense of lack of permissive use); Cutler v. Travelers Ins. Co., 138 Vt. 113, 412 A.2d 284
(1980) (thief did not have the insured's express or implied consent to operate vehicle).[1]
Alfa further argues that the law relating to bailment should be applied in determining whether Young had "delivered" her vehicle to Barclift in order to determine whether Young had knowingly given Barclift her express permission to drive her vehicle. In this regard, Alfa cites S/MIndustries, Inc. v. Hapag-Lloyd A.G., 586 So.2d 876 (Ala. 1991), in which this Court, adopting the trial court's findings of fact, defined a bailment as follows:
 "`2. A bailment is defined as the delivery of personal property by one person to another for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. Farmer v. Machine Craft, Inc., 406 So.2d 981
(Ala.Civ.App. 1981). In order for a bailment to exist the bailee must have voluntarily assumed the custody and possession of the property for another.'"
586 So.2d at 881-82. Alfa's argument is not persuasive, however, because the clear language of the policy requires only that the insured or a family member give express permission to use the vehicle, not that a delivery, as required for a bailment, occur.
In regard to Young's directive to Barclift to return her vehicle once she had discovered that he was driving it, Alfa quotes from Pettis v.State Farm Mutual Automobile Insurance Co., 286 Ala. 344, 239 So.2d 772
(1970), the statement that a "subsequent expression of ratification of the use by [the owner] cannot serve to impose retroactive liability on the insurer under the omnibus clause of the policy." 286 Ala. at 348,239 So.2d at 776. In Pettis, a 16-year-old drove, without permission, an automobile entrusted to his 17-year-old friend by the friend's father; he was involved in a collision with another vehicle. Two days later, the 16-year-old asked his friend whether he was mad with him. The friend replied, "[N]o, that it would have been all right if [the 16-year-old] had not wrecked the car." 286 Ala. at 348, 239 So.2d at 776. This Court simply held that, to the extent that this "ex post facto statement" could be deemed a ratification of the 16-year-old's use of the vehicle, it did not lessen the intervening right of the vehicle's insurer — fixed at the time of the collision — to deny coverage for the then nonpermissive use. This argument is not persuasive in the context of this case *Page 747 
because the liability sought to be imposed here arose as the result of an event that occurred after Young had told Barclift to return her vehicle.
In Alabama Farm Bureau Mutual Casualty Insurance Co. v. GovernmentEmployees Insurance Co., 286 Ala. 414, 240 So.2d 664 (1970), a case discussed at length in Pharr, supra, this Court stated:
 "The decision in the instant case turns on the construction and application of the words `express permission.' Where only `permission' is required, the courts have held that the permission is sufficient to provide coverage if the facts justify a finding that either express or implied permission had been granted by the named insured or other person authorized to grant permission. See 5 A.L.R.2d 601. One court has said:
 "`Under the Virginia statute, the permission of an assured in a liability insurance policy, to bind the insurance company, may be either express or implied. To be express, it must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference. . . .' Hinton v. Indemnity Ins. Co., 175 Va. 205, 213, 214, 8 S.E.2d 279, 283 [(1940)].
 "In Webster's Third New International Dictionary, Copyright 1961, page 803, the adjective `express,' is defined as follows:
 "`1a: directly and distinctly stated or expressed rather than implied or left to inference: not dubious, or ambiguous: DEFINITE, CLEAR, EXPLICIT, UNMISTAKABLE.'"
286 Ala. at 418, 240 So.2d at 667-68 (capitalization original; emphasis added). Other jurisdictions similarly define what constitutes express permission. See, e.g., State Farm Mut. Ins. Cos. v. AMCO Ins. Co.,9 Neb. App. 872, 621 N.W.2d 553 (2001); American Family Ins. Group v.Howe, 584 F. Supp. 369 (D.S.D. 1984); Truck Ins. Exchange v. Hunt,590 S.W.2d 425 (Mo.Ct.App. 1979).
Although Barclift initially did not have Young's express permission when he drove her vehicle from their home to Opelika, that trip was a separate occurrence; had the accident occurred while Barclift was en route to Opelika, Alfa would have a strong argument that it was not required to provide coverage under the terms of the policy, and any ex post facto attempt by Barclift to grant permission retroactively would have been unavailing as to the insurer. However, once Barclift telephoned Young and told her that he had her vehicle, she clearly and unmistakably ordered that he get in the vehicle and return it to their home. This represents a change in circumstances because, as the trial court found, Young easily could have ordered Barclift to leave her vehicle parked. Therefore, we conclude that, in the final analysis, Barclift had Young's "before-the-fact" express, if begrudging, permission to drive the vehicle, by virtue of her expressly ordering him to get in it and drive it back to their home. Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
Moore, C.J., and Houston, Lyons, Brown, Johnstone, Woodall, and Stuart, JJ., concur.
[1] Alfa also cites Motor Club Fire Casualty Co. v. New JerseyManufacturers Co., 73 N.J. 425, 375 A.2d 639 (1977), which held that a passenger had the insured's permission to occupy the vehicle as a passenger and his subsequent "ouster" of the insured from the vehicle and assumption of control as its driver did not constitute "theft and the like" so as to negate that permission under the New Jersey Supreme Court's "broadest and most liberal approach, known as the `initial permission rule,'" 73 N.J. at 432, 375 A.2d at 643, and that state's legislative policy to provide protection to innocent victims. Except in the broadest sense of a discussion of permission, we conclude that this case is not relevant to our consideration of the facts and law applicable to the instant case. *Page 748